Francis J. BURNS, Plaintiff,

v.

James Leo SULLIVAN et al., Defendants.

Civ. A. No. 78–1532–C.

United States District Court, D. Massachusetts.

June 29, 1979.

Richard L. Zisson, John A. Moos, Zisson & Veara, Boston, Mass., for plaintiff.

Kenneth A. Behar, Behar & Kalman, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This action is brought pursuant to 42 U.S.C. §§ 1983 and 1985(3) for alleged violations of plaintiff's constitutional rights. The matter is now before the court for consideration of defendants' motion to dismiss.

Plaintiff Burns is a police officer employed by the City of Cambridge, Massachusetts. In October 1973 a civil service examination was administered to 110 individuals, including Burns, who wished to be considered for promotion to the rank of sergeant in the Cambridge Police Department. In April 1974 on the basis of the exam results the Director of Civil Service, Commonwealth of Massachusetts established a list of seventy-three persons eligible for promotion to the rank of Sergeant. The names were listed according to the scores

achieved with the name of the man scoring highest in first place. Burns' name appeared ninth on that list.

In July 1974 five black patrolmen filed suit in the United States District Court (*Kantor v. Sullivan,* C.A. No. 74–2662–T) against numerous State and City officials alleging that the hiring and promotional procedures followed by the Cambridge Police Department were racially discriminatory. All parties in that controversy agreed that no individual whose name appeared on the eligibility list would be promoted to the rank of sergeant until the *Kantor* suit was resolved.

In June 1975 a consent decree was entered in *Kantor v. Sullivan.* Under the terms of that decree twenty-eight men were to be selected for promotion to the rank of sergeant.

In accordance with the terms of the consent decree then Chief of Police Pisani requested that the Massachusetts Division of Civil Service provide him with the names of the applicants who were eligible for the twenty-eight positions. He received a list containing the names of the top forty men on the original list and was directed to choose twenty-eight from among those forty.[1]

On July 3, 1975 Burns was notified that he had not been promoted and that he had been passed in favor of twenty-two men including three black men whose names had appeared below his on the eligibility list.

Under Massachusetts law an appointing authority[2] electing to by-pass an individual for promotion must state its reason for so doing. Mass.Gen.Laws ch. 31 § 15C.[3] In the case at bar Chief Pisani stated in writing that the twenty-two men who had been selected over Burns for promotion were "better qualified". The twenty-eight names selected had also been approved by City Manager James L. Sullivan before they were submitted to and approved by the Civil Service Personnel Administrator.

Burns alleges that the conclusion of the Chief of Police and City Manager as approved by the personnel administrator that twenty-two others were "better qualified" than he was arbitrary, capricious and unsupported by plaintiff's record as a police officer and that it was not based on fact or any reasonable objective standard of comparison.

It is plaintiff's contention that he was denied promotion because he belongs to three classes which are defined by invidious criteria

1) White patrolmen in the Cambridge Police Department

2) Active and vocal white members of the Cambridge Patrolmen's Association

3) White patrolmen in the Cambridge Police Department who have been outspoken with regard to administration and management politics of the Cambridge Police Department to people outside of the department

Plaintiff alleges that a conspiracy existed between Chief Pisani,[4] City Manager James L. Sullivan and others to promote three black patrolmen to the rank of sergeant and that to accomplish the purpose of that conspiracy it was necessary to pass over several white patrolmen who had achieved higher scores on the competitive exam. Plaintiff further alleges that in order to determine who among the white patrolmen would not be promoted the City Manager and Chief of Police considered membership in the second two classes set forth above. It is plaintiff's

---

1. Notwithstanding the fact that Chief Pisani was provided with forty names, plaintiff attaches some significance to his allegation that it had been the practice of the appointing authority for twenty-five years to promote patrolmen to the rank of sergeant according to the order in which their names appeared on the eligibility list.

2. In the case at bar the appointing authority consisted of the Chief of Police and the defendant City Manager James L. Sullivan.

3. The provisions of § 15C have been substantially duplicated in the present Mass.Gen.Laws ch. 31 § 27.

4. Chief Pisani died before this action was filed and thus is not a defendant herein.

contention herein that he was denied equal protection of the law as guaranteed by the fourteenth amendment in violation of 42 U.S.C. §§ 1983 and 1985(3) when his race became a dispositive factor in his failure to be promoted. Plaintiff also contends that defendant James L. Sullivan further violated Section 1983 when he acted under color of state law to penalize Burns for exercising his constitutionally guaranteed right of free speech and deprived plaintiff of his promotion and the exercise of free speech without due process of law.

The only allegations against defendant City Councilor Walter J. Sullivan relate to the time period after plaintiff had been skipped for promotion. Burns alleges that Walter J. Sullivan acting individually and in conspiracy with City Manager James L. Sullivan warned plaintiff that public discussion of the matter would jeopardize his chances of promotion to the rank of sergeant before the eligibility list expired. Plaintiff further alleges that the repeated warnings from defendant City Councilor Walter Sullivan had a chilling effect on plaintiff's first amendment rights.

■ Defendants James L. Sullivan and Walter J. Sullivan move herein to dismiss the complaint. However since affidavits and depositions will be considered in its determination, the court will treat defendants' motion as a motion for summary judgment.

■■ The court recognizes at the outset that the position of police sergeant is a position of considerable responsibility and thus that the latitude of discretion afforded to those involved in the selection process must necessarily be broad. *See, DiPiro v. Taft,* 584 F.2d 1 (1st Cir. 1978), *petition for cert. denied,* 440 U.S. 914, 99 S.Ct. 1229, 59 L.Ed.2d 463 (1978) (No. 78–967). When the State legislature enacted Mass.Gen. Laws ch. 31 § 15C it recognized that some degree of discretion in the appointing authority was necessary to insure that the most suitable applicant would fill the vacancy. It is clear therefore that Chief Pisani and City Manager Sullivan were expected to exercise their discretion in selecting twenty-eight candidates from the top forty names on the list for promotion to the rank of sergeant.

■ Where a city or state official's judgment and discretion is involved in an action under Section 1983 the plaintiff must show that each official personally participated in depriving plaintiff of a constitutional right, *Maiorana v. MacDonald,* 596 F.2d 1072 (1st Cir. 1979); *Kostka v. Hogg,* 560 F.2d 37 (1st Cir. 1977) and that the acts of each were purposefully discriminatory. *Gaffney v. Silk,* 488 F.2d 1248, 1250 (1st Cir. 1973) or at least knowing and reckless *Harrison v. Brooks,* 446 F.2d 404 (1st Cir. 1971).

■ To succeed at trial on his equal protection claim therefore Burns must show that defendant City Manager James L. Sullivan acted individually or as part of a conspiracy to purposely deny plaintiff a promotion to the rank of sergeant on the basis of his race or because of the exercise of his constitutionally guaranteed free speech.

Defendants' motion to dismiss is supported by the affidavit of defendant City Manager James L. Sullivan in which the City Manager states under oath that he has never acted or conspired with any person to deny plaintiff a promotion to police sergeant because he was a white man and that he has never conspired and agreed that certain black patrolmen would be promoted.

To counter the affidavit of City Manager Sullivan, plaintiff presents several pages of the deposition of Beryl Cohen, attorney for the black patrolmen in *Kantor v. Sullivan.* Mr. Cohen's testimony establishes for purposes of this motion that in addition to the terms of the consent decree in the *Kantor* case, Mr. Cohen received an oral promise that three of the black patrolmen he represented would be promoted. Mr. Cohen also stated however that he does not recall whether defendant James L. Sullivan was aware of that agreement.

■ It is the opinion of this court however that even if plaintiff had evidence which established that the City Manager

was privy to such an agreement, such evidence would not be enough to support plaintiff's allegation that he was a victim of racial discrimination.

Two of the black patrolmen who were promoted to the rank of sergeant were among the top twenty-eight names on the eligibility list. Therefore even if the appointing authority had simply promoted the men in the top twenty-eight slots as plaintiff argues had been its practice for twenty-five years, black patrolmen Kantor and Benson[5] would still have been promoted to the rank of sergeant. Additionally, plaintiff cannot argue that the appointing authority went down on the list solely to effectuate the alleged deal with Mr. Cohen since the lowest person on the list to be promoted was number thirty-one, patrolman McDevitt, a white man.[6] It is also pertinent that nineteen of the twenty-two men who by-passed plaintiff were white men. The existence of the alleged deal between Mr. Cohen and the defendant City Manager therefore would not support plaintiff's allegation that the decision not to promote him was based on a consideration of his race.

█ Assuming for purposes of this motion however that the agreement to promote three black men was a substantial factor in the decision to skip over the names of three white men whose names were higher on the list, plaintiff argues that he was one of the three chosen to be skipped because in addition to being white he had exercised his constitutionally guaranteed right of free speech as an active member of the union and by criticizing the administration and management of the Cambridge Police Department to persons outside the department.

The uncontradicted affidavit of James L. Sullivan, the City Manager states that he has never acted or conspired with any person to deny plaintiff a promotion to the rank of sergeant because he was a vocal active white member of the Cambridge Patrolmen's Association or because he was critical of the administration and management of the Cambridge Police Department to persons outside the department. Defendant James L. Sullivan further states under oath that he was never present at any union meeting at which plaintiff spoke nor had he ever heard plaintiff make any statement involving the administration or management of the Cambridge Police Department nor had he knowledge of any such critical statements. The City Manager further deposes that he never took any action adverse to plaintiff due either to his police union membership or any statements made by him at union meetings or elsewhere. When deposed plaintiff readily conceded that he has no information that union activity was an important consideration in the selection process and that at least one other white man active in the union was among the twenty-eight promoted to the rank of sergeant. In addition, plaintiff points to no statement made by him to persons outside the department which was critical of the department's management or administration. In fact plaintiff states that he had a good working relationship with Chief Pisani and thought that he was doing an excellent job. It would appear therefore that plaintiff in the face of City Manager Sullivan's affidavit is unable to point to evidence which raises a question of material fact as to the free speech allegations set forth in his complaint.

> While we believe that the plaintiff is entitled to all favorable inferences, he is not entitled to build a case on the gossamer threads of whimsey, speculation and conjecture.

*Hahn v. Sargent,* 523 F.2d 461, 467 (1st Cir. 1975), *cert. denied* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54 (1976), (quoting *Manganaro v. Delaval Separator Co.,* 309 F.2d 389, 393 (1st Cir. 1962). As to plaintiff's equal protection claims against City Manager James L. Sullivan, which relate to events

---

**5.** Patrolmen Kantor and Benson appeared as numbers 20 and 27 respectively on the eligibility list.

**6.** The third black patrolman to be promoted was Patrolman Halliday who appeared thirtieth on the eligibility list.

occurring on or before July 5, 1975 therefore, I rule that defendant should be granted summary judgment.

Having in mind that only those individuals who are being deprived of a property or liberty interest are entitled to due process of law, *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the court turns next to plaintiff's claim that the actions of James L. Sullivan deprived him of a promotion to the rank of sergeant and the exercise of his right of free speech without procedural due process.

It is clear that plaintiff had no property interest in the promotion to the rank of sergeant. Plaintiff's interest here is created by state law and the law of Massachusetts confers no property rights on an individual whose name appears on a civil service eligibility list for promotion since, as discussed above, the ultimate selection is left to the discretion of the appointing authority.

Additionally plaintiff argues that he was deprived of a liberty interest without due process when he was penalized for exercising his right to free speech. As had already been seen however, plaintiff's allegations that the selection was based on the exercise of free speech are premised upon his own conjecture and not supported by evidence.[7]

It is well settled in this circuit that local government personnel decisions even if clearly erroneous do not achieve constitutional dimensions unless an intentional deprivation of a constitutional right has occurred *DiPiro v. Taft, supra.* In addition the Supreme Court has ruled that "[t]he Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood, supra* 426 U.S. at 349–50, 96 S.Ct. at 2080. I rule therefore that as to plaintiff's claim against defendant James L. Sullivan for denial of due process summary judgment should be entered for the defendant.

Plaintiff next argues that he was denied his constitutionally guaranteed right of free speech after July 5, 1975 as a result of the acts of City Councilor Walter J. Sullivan who acted individually and in conspiracy with City Manager James L. Sullivan. Plaintiff alleges in his complaint that after his name had been passed over he sought the assistance of Walter J. Sullivan and was warned by the City Councilor that any hope of future promotion from the list would be jeopardized by public discussion of the matter and that plaintiff should keep a low profile and not hire an attorney.

The affidavits of Walter J. and James L. Sullivan deny the existence of such a conspiracy and state that no action was taken to prevent plaintiff from discussing the promotions from the eligibility list. In addition, plaintiff testified at his deposition that he had no knowledge that the warnings from Walter Sullivan were made in bad faith and that despite those warnings he spoke to numerous City officials, participated vocally in at least one union meeting and hired a lawyer. Plaintiff also testified that oftentimes his reason for not speaking out was a fear that his words would be misinterpreted or taken out of context. In addition the advice which plaintiff was simultaneously receiving from his attorney was similar to that given him by Walter Sullivan.

It is apparent therefore the plaintiff has no evidence that Walter J. Sullivan acted to intentionally deprive him of his constitutional guaranteed rights or that he was so deprived. Defendants Walter J. Sullivan and James L. Sullivan are therefore entitled to summary judgment as to the claims relating to the time period following July 5, 1975.

---

7. Whether or not the requirements of Mass. Gen.Laws ch. 31 § 15C were satisfied by the words "better qualified" is a question of state law without federal significance.