PINECREST VILLAGE, INC. *vs.* RICHARD J. MACMILLAN.[1]

Middlesex. March 6, 1997. - May 21, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, O'CONNOR, GREANEY, FRIED, & MARSHALL, JJ.·

*Fire Prevention. Building. Zoning,* Condominium, State building code. *Statute,* Construction.

General Laws c. 148, § 26I, requires the installation of an automatic sprinkler system in condominium townhouses of four or more units built after the date the municipality has adopted the statutory provisions, and any provision of the State building code that might conflict with that statute does not apply. [72-76] LYNCH, J., dissenting, with whom ABRAMS, J., joined.

CIVIL ACTION commenced in the Superior Court Department on October 21, 1993.

The case was heard by *Christine M. McEvoy*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John V. Fernandes* (*Evan Lawson* with him) for the plaintiff.

*Laurence A. Faiman* for the defendant.

*Edward J. DeAngelo*, Assistant Attorney General, for the Commonwealth, amicus curiae, submitted a brief.

FRIED, J. The plaintiff, Pinecrest Village, Inc., sought a declaratory judgment in the Superior Court that G. L. c. 148, § 26I, did not require the installation of an automatic sprinkler system in townhouse condominium complexes that it was building. The Superior Court granted summary judgment in favor of the defendant, the fire chief of Hopkinton, concluding that the plain language of § 26I requires the sprinkler system. The plaintiff appealed. We transferred the case to this court on our own motion and affirm.

I

In 1988, the plaintiff obtained a permit from the Hopkin-

---

[1]Individually and as the fire chief of Hopkinton.

ton zoning board of appeals to construct buildings each containing six to eight townhouse condominium units. After the plaintiff had built several structures, the town of Hopkinton adopted the provisions of G. L. c. 148, § 26I, at a town meeting, and the parties do not dispute that those provisions became effective before Pinecrest requested approval to construct the remainder of its development. Section 26I provides:

> "In a city, town or district which accepts the provisions of this section, any building hereafter constructed or hereafter substantially rehabilitated so as to constitute the equivalent of new construction and occupied in whole or in part for residential purposes and containing not less than four dwelling units including, but not limited to, lodging houses, boarding houses, fraternity houses, dormitories, apartments, townhouses, condominiums, hotels, motels and group residences, shall be equipped with an approved system of automatic sprinklers in accordance with the provisions of the state building code."

Pinecrest Village then requested a permit for its fifth building. The building inspector of Hopkinton assumed that § 26I would apply, and he issued a permit reflecting that decision, and Pinecrest Village installed a sprinkler system in its next building. The building inspector of Hopkinton was then advised by the State building inspector that § 26I did not apply to the Pinecrest Village development because the individual units in the development met the requirements under 780 Code Mass. Regs. § 910.3 (1992) for treatment as separate buildings, and, if treated as separate buildings under the building code, the units would not have to be equipped with a sprinkler system. Section 910.3 states:

> "Single-family dwelling units . . . located above or adjacent to other single-family dwelling units . . . shall be considered as one building . . . for the purpose of determining the applicable provisions of this code, provided each dwelling unit is completely separated from the adjacent dwelling unit(s) by fire separation wall(s) and floor/ceiling assemblies of not less than 1-hour fire-resistance rated construction and each unit has independent means of egress."

Such buildings are specifically exempted from any sprinkler requirements under the State building code, 780 Code Mass. Regs. § 1002.1 (1992), and if this definition of "building" were used for purposes of § 26I, the statute also would not require sprinklers in buildings meeting the requirements of § 910.3. The dwellings in the Pinecrest Village development were separated by two-hour fire resistance rated construction, and each unit had at least one independent means of egress. There were no common areas. The building inspector of Hopkinton, accepting this interpretation that each dwelling was a separate building for purposes of the statute, issued permits for two more buildings in the Pinecrest Village development without requiring a sprinkler system. After these buildings were completed and each of the units sold, the fire chief informed Pinecrest Village that § 26I did apply to the development, and ordered Pinecrest Village to install a sprinkler system in each unit of those two buildings.

Pinecrest Village sought review first from the State fire marshal, but he declined to hear the appeal, citing lack of jurisdiction. Pinecrest Village then sought a declaratory judgment in the Superior Court, naming the fire chief, the building inspector of Hopkinton, and the town as defendants. All parties moved for summary judgment. The motions of Pinecrest Village and the building inspector who agreed with Pinecrest Village's interpretation were denied, and the motions of the fire chief and the town were allowed.

II

General Laws c. 248, § 26I, on its face, requires automatic sprinkler systems to be installed where the following conditions are met: the town has adopted the provisions of the statute, the building was constructed or substantially renovated after the date the statutory provisions were adopted, and the building contains not less than four dwelling units. The statute lists no other conditions nor are there any explicit limitations on the scope of the statute. There is no dispute that Hopkinton properly adopted the statute and that the buildings in question were built after the town adopted the statutory provisions. There is also no question that the townhouses built by Pinecrest Village were built in structures housing more than four units. The remaining questions in this appeal are whether the whole structure of six to eight units or each

individual dwelling unit is a "building" within the meaning of § 26I and whether § 26I controls.

We start with the understanding of the word "building," as that ordinary meaning will be given effect under the statute. *Gately's Case*, 415 Mass. 397, 399 (1993). The ordinary understanding of the word "building" is an entire structure, not the individual units within that larger structure.[2] This reading of the statute is bolstered by the examples the statute gives of buildings which explicitly include townhouses as well as other large structures housing many subunits such as hotels and apartment buildings. Pinecrest Village, however, argues that § 26I did not intend this ordinary meaning. As support for this proposition, Pinecrest Village points to the State building code, 780 Code Mass. Regs. § 910.3 (1992), which states that connected single-family dwellings, such as the Pinecrest Village townhouses, are to be treated as separate buildings under the building code provided that the units are separated by appropriate fire resistant materials and each has an independent means of egress. All parties agree that the Pinecrest Village development meets the conditions such that its individual units are to be treated as separate buildings under the building code. On this alone, however, Pinecrest Village cannot succeed. The classification of buildings in the building code does not carry over to a legislative enactment when the ordinary reading of the statute and the examples given within the statute suggest a different classification was intended. There is no inherent reason why the statute and the building code cannot operate with different definitions of the word "building," and to the extent that there is a conflict, the statute must prevail over the administrative regulation. See *Massachusetts Hosp. Ass'n* v. *Department of Medical Sec.*, 412 Mass. 340, 342 (1992).

Pinecrest Village, however, argues that the statute expressly incorporated the building code's definition when the statute stated that the buildings described "shall be equipped with an approved system of automatic sprinklers in accordance with the provisions of the state building code." This reading of the

---

[2]General Laws c. 143, § 1, defines a "[b]uilding" as "a combination of any materials, whether portable or fixed, having a roof, to form a structure for the shelter of persons, animals or property. . . . The word 'building' shall be construed where the context requires as though followed by the words 'or part or parts thereof.' "

clause does not accord with its natural reading. The clause is awkwardly placed to incorporate the building code's definition of the word "building" which occurs in a separate part of the sentence. The natural reading of this clause suggests that it is meant to explain how the sprinklers should be installed and what sprinkler systems would be approved. The reference to the building code in this context is used to refer to the technical requirements of a sprinkler system. These are the sorts of technical details which are often left to an administrative agency with expertise in that area rather than codified at length in a statute. The building code in fact has a lengthy section governing the design and installation of sprinkler systems, and it is to this the Legislature wanted to refer. See 780 Code Mass. Regs. §§ 1004.1-1004.8 (1992).

Pinecrest argues that its reading of the statute must be correct, otherwise, there would be no instances to which the building code provisions would apply. We disagree. The system that c. 148, § 26I, created was one in which municipalities could choose to adopt stricter fire regulations. The building code describes the default rules for those communities which do not elect the stricter requirements of § 26I. Pinecrest Village also argues that the building code expressly indicates that G. L. c. 148, § 26I, does not require sprinklers in developments such as Pinecrest Village by referring to 780 Code Mass. Regs. § 1002.1 (1992). Section 1002.1 states:

> "Fire suppression systems shall be installed and maintained in full operating condition . . . in the locations indicated in Sections 1002.2 through 1002.21. (Note: . . . Fire Suppression Systems may be required to be installed in Use Groups other than listed below, in communities which have adopted local option laws also under [G. L. c. 148, § 26].) Exception: Buildings of Use Group R-3."

Section 910.3 which would allow the Pinecrest Village dwellings to be treated as separate buildings also classifies those separate buildings as Use Group R-3. Thus, Pinecrest Village argues that the exception to § 1002.1 makes it clear that the building code does not contemplate sprinklers in the Pinecrest Village townhouses even if they fall within the literal terms of § 26I. That the note regarding § 26I is set off in parentheses, but the exception is not, suggests that the exception for Use

Group R-3 is an exception to the first sentence which describes when sprinklers are required under the building code, and that it is not an exception which applies to § 26I. The history of the statute also supports this interpretation. The exception was part of the statute before the note in the parenthetical regarding § 26I was added so that the exception could only have been intended as an exception to the building code, not § 26I. For this reason, § 1002.1 argues against Pinecrest Village's contention rather than supports it.

Pinecrest Village's final argument is that the building code and the statutory framework relating to the code fall within the province of the town's building inspector and the State building code appeals board, both of which have supported Pinecrest Village's interpretation of § 26I and the relevant sections of the building code. Pinecrest Village cites *Fire Chief of Cambridge* v. *State Building Code Appeals Bd.*, 34 Mass. App. Ct. 381 (1993), for support. In that case, the Appeals Court determined that the local building inspector, not the fire chief, had final authority over the interpretation of the building code for the installation of sprinklers required by G. L. c. 148, § 26B. The dispute in that case turned entirely on a technical interpretation of the building code because the statute specifically referenced the building code's requirements as to how the sprinkler system requirement should be implemented. The Appeals Court noted that weight is given to the "interpretation of the statutes under which [the administrative agency] operates and the regulations which it has formulated." *Id.* at 384-385. The court noted that the interpretation of the building code with respect to the implementation of the sprinkler system was "a classic example of when the expert technical knowledge of an administrative agency comes to bear and should not be disturbed in the absence of powerful evidence to the contrary." *Id.* at 385. In this case, while we agree that the building inspector is entitled to deference in his interpretation of the building code and the related statutory framework, deference to the interpretation of the building inspector is less appropriate where the question is whether as a matter of statutory interpretation the building code applies at all. The interpretation of plain statutory language does not require the sort of technical expertise inherent in interpreting nuances of the building code, and we

conclude that the building inspector's interpretation cannot stand in the face of a clear legislative mandate.[3]

We conclude that the Superior Court properly granted summary judgment in favor of the defendants, and we hold that § 26I, where properly adopted, requires sprinklers in all townhouses composed of four or more units built after the date the statutory provisions were adopted.

*Judgment affirmed.*


LYNCH, J. (dissenting, with whom Abrams, J., joins). Today, the court concludes that G. L. c. 148, § 26I, requires automatic sprinklers in the plaintiff's townhouses, although the provisions of the State building code would lead to the conclusion that such sprinklers are not required. As a result these self-contained structures, which have enhanced safety features of fire walls and individual exits, must have sprinklers, while similar units without fire walls and individual exits need only sprinklers.

The court is led to its result because it concludes the plaintiff's individual units are not "buildings" within the meaning of § 26I. I see no need to reach this result, which the Legislature could not have intended. Section 26I contains no definition of the critical term, so we must look elsewhere to give meaning to the statutory enactment. The court looks to the "ordinary meaning" of the term while I would look to the context within which it is used, the purpose served, and the problem to be remedied. See *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986); *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587-588 (1984). In applying this test I am led to the conclusion that the out-of-context meaning of the term "building" should not control when the State building code meaning has direct application to the problem at hand and produces a result more in keeping with reasonable safety concerns.

When the Legislature enacts a comprehensive scheme of legislation, it is appropriate to look to the administrative

[3]We note that the Attorney General filed a brief on behalf of the State fire marshal in support of the conclusion we reach here. In this regard, the State fire marshal may be entitled to just the deference Pinecrest Village claims for the building inspector.

agency which must give effect to the statute for understanding.[1]
See *First Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n*, 372
Mass. 478, 485 (1977); *Board of Educ.* v. *Assessor of Worcester*,
368 Mass. 511, 515-516 (1975). "[T]he consistent interpretation
of a statute, since its enactment, by the agency charged with the
administration of the law is entitled to consideration." *First
Fed. Sav. & Loan Ass'n* v. *State Tax Comm'n, supra.* General
Laws c. 148, § 26I, inserted by St. 1989, c. 642, is part of a
comprehensive statutory scheme designed to promote fire safety.
*1010 Memorial Drive Tenants Corp.* v. *Fire Chief of Cambridge*,
424 Mass. 661, 663 (1997). The State building inspector, the
agency charged with the responsibility for implementing the
statutory requirements in this area, adopts the interpretation of
the statute that I espouse.

Furthermore, the Legislature looks to the State building code
to give effect to the broad provisions in fire prevention statutes,
including G. L. c. 148, § 26I. When the statute was promulgated,
the building code, 780 Code Mass. Regs. § 201.3 (1988),
defined the word "building" as follows:

> "A structure enclosed within *exterior walls or firewalls*,
> built, erected and framed of a combination of any materi-
> als, whether portable or fixed, having a roof, to form a
> structure for the shelter of persons, animals or property
> . . ." (emphasis added).[2]

---

[1] "The rulemaking authority of modern administrative agencies has become
the indispensable means by which legislative mandates are translated into ef-
fective governmental regulation. The very essence of the modern administra-
tive agency lies in the recognition that legislatures are often unable or unwill-
ing to provide detailed regulation of essential areas of governmental concern.
Through the use of enabling or organic acts involving the delegation of rule-
making power to administrative agencies or officials, the legislature is able to
provide such agencies or officials with the authority needed to prescribe in
great detail the terms and conditions under which regulated activity will
proceed." A. Cella, Administrative Law and Practice § 721 (1986).

[2] The 1997 edition of the State building code defines the word "building" as
follows:

> "A structure enclosed within exterior walls or firewalls, built, erected
> and framed of a combination of any materials, whether portable or
> fixed having a roof, to form a structure for the shelter of persons,
> animals, or property. . . . For application of 780 CMR, each por-

The fire resistant construction section of the building code, 780 Code Mass. Regs. § 910.3 (1992), considers multiple single-family dwellings as separate buildings:

> "Single-family dwelling units . . . located above or adjacent to other single-family dwelling units . . . shall be considered as one building . . . for the purpose of determining the applicable provisions of this code, provided each unit is completely separated from the adjacent dwelling unit(s) by fire separation wall(s) and floor/ceiling assemblies of not less than 1-hour fireresistance rated construction and each unit has independent means of egress."

In my view there is nothing in § 26I that requires us to ignore the precise requirements of the building code. Section 26I specifically requires that buildings be equipped with sprinklers "in accordance with the provisions of the state building code." The Legislature is assumed to know the building code's definition of the word "building." "The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent." *Oxford* v. *Oxford Water Co., supra* at 592, and cases cited. The court avoids incorporating the building code's definition into § 26I by a formulaic reading of the statute, and by concluding that the interpretation of the statute I espouse is awkward. See *ante* at 74. I would choose an awkward reading of the statute over an awkward result.

As the court notes, *ante* at 73, under the building code, multi-family dwellings with separate entrances and fire separation walls are considered single-family units that do not require sprinklers. See 780 Code Mass. Regs. § 910.3 (1992). Fire separation walls are designed to prevent the spread of fire. Separate egresses reduce the risk that residents will be trapped in the event of a fire elsewhere in the complex. In recognition of the greater safety provided by these features the building code does not require automated sprinkler systems in single-family units. In my opinion neither does § 26I.

I therefore respectfully dissent.

---

tion of a building which is completely separated from other portions by fire walls complying with 780 CMR 707.0 shall be considered as a separate building." 780 Code Mass. Regs. § 202 (1997).