Winifred N. COTTER, Vincent J. Difazio, John P. Doris, William J. Dwan, William G. Knecht, Michael Locke, Patrick L. Murphy, and Thomas L. Sexton, Plaintiffs,

v.

CITY OF BOSTON and James J. Hartnett, Jr., Defendant.

Civil Action No. 99–11101–WGY.

United States District Court, D. Massachusetts.

Oct. 20, 1999.

Michael C. McLaughlin, Boston, MA, for Winifred N. Cotter, Vincent J. Difazio, John P. Doris, William G. Knecht, Michael Locke, Patrick L. Murphy, Thomas L. Sexton.

Mary Jo Harris, Boston Police Dept., Office of the Legal Advisor, Boston, MA, for Boston Police Dept., Paul Evans, Edward P. Callahan.

Mertia A. Hopkins, Boston Police Dept., Office of Legal Advisor, Boston, MA, for City of Boston.

Edward J. DeAngelo, Atty. General's Office, Boston, MA, Candies Pruitt, Asst. Atty. Gen. Government Bureau, Boston, MA, for Commonwealth of Mass.

Grace M. Jones, Lawyers Committee for Civil Rights/Boston, Boston, MA, Rutowski Rheba, Bingham Dana LLP, Boston, MA, for Dennis A. White, Harold White, Massachusetts Assocication of Minority Law Enforcement Officers.

Edward J. DeAngelo, Atty. General's Office, Boston, MA, Ginny Sinkel, Office of the Atty. General, Government Bureau, Boston, MA, Mary Jo Harris, Boston Police Dept., Office of the Legal Advisor, Boston, MA, for James J. Hartnett, Jr.

### MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

In 1997, eleven City of Boston police officers earned a score of 84 on the civil service sergeant's exam, a certification test administered by the Commonwealth of Massachusetts Human Resources Division (the "Division"). Eight of these officers were "white" (the "White Officers") and three were "black" (the "Black Officers").[1]

---

1. Although the parties use the terms "white" and "black" as though their meaning were self-evident, facile adoption of these stereotypes only compounds the issues the Court is asked to address. Racism is a persistent, intractable, and ugly fact of American life, *see e.g. United States v. Leviner*, 31 F.Supp.2d 23, 33 (D.Mass.1998) (Gertner, J.), and it is blind

When the Boston Police Department (the "Police Department") promoted only the Black Officers, the White Officers brought this action against the City of Boston (the "City") and James J. Hartnett, Jr. ("Hartnett"), in his official capacity as the Personnel Administrator of the Division. The White Officers allege civil rights violations under 42 U.S.C. § 1983, claiming that the City's decision was unlawfully motivated by race and Hartnett's office failed in its duty to prevent such discriminatory actions. Hartnett says, in effect, "Who? Me?" and moves to dismiss the White Officers' claims against him for failure to state a claim upon which relief may be granted because he neither made the promotion selections nor allegedly possessed legal authority under Massachusetts law to prevent selection among equally-scoring candidates.[2]

## II. MOTION TO DISMISS STANDARD

Taking all facts and inferences drawn therefrom in favor of the White Officers, this Court must grant a motion to dismiss "if it clearly appears, according to the facts alleged, that the plaintiff[s] cannot recover on any viable theory." *Figueroa v. Rivera*, 147 F.3d 77, 80 (1st Cir.1998). Despite this low threshold, the pleading requirement is "not entirely a toothless tiger." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 190 (1st Cir.1996). In order to survive a motion to dismiss, the White Officers must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery...."

ignorance to declaim that the concept of "race" is nothing more than a social construct. Race matters. Just ask anyone who considers herself black. Still, the Court cannot help but observe that embedded in all governmental efforts to eradicate racism by direct governmental action are a myriad of untested assumptions about "race" that reinforce the coarsest type of racial stereotyping. It is a conundrum. Perhaps the best that can be said here is that the plaintiff officers consider themselves "white" and the City of Boston considers the officers initially appointed "black."

*Cooperman v. Individual, Inc.*, 171 F.3d 43, 47 (1st Cir.1999). As such, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like...." *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999).

## III. FACTUAL BACKGROUND DERIVED FROM THE AMENDED COMPLAINT

On October 19, 1996, the Division administered a certification exam for Boston police officers seeking a promotion to the rank of sergeant. *See* Am.Compl. ¶ 18. After scoring the exams, the Division provided the Police Department with a list of the 69 highest scorers arranged in alphabetical order by each score (ranging from 92 down to 82). *See id.*, Ex. A. The group with a score of 84 included both the White Officers and the Black Officers. *See id.* at ¶ 24. The Police Department eventually promoted a total of 36 individuals including the Black Officers. *See id.* at ¶ 38. The White Officers, despite the fact that they had the same score as the Black Officers, did not receive promotions. *See id.* at ¶ 35.

Correspondence between Police Department officials and Hartnett's office reveal a concerted effort by the Police Department to promote the Black Officers because of their race. Most strikingly, the Police Department initially promoted the Black Officers to the exclusion of six "white" officers who had the higher score of 85.[3] *See id.*, at ¶ 37, Ex. B. In corre-

2. The Division itself originally was named as a defendant and also made a motion to dismiss the complaint because, as a state agency, it is not a proper defendant in a federal civil rights lawsuit. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). In their amended complaint, filed after the Division's motion to dismiss, the White Officers have dropped the Division as a defendant and, accordingly, its motion is moot.

3. At the time of the examination, there were only 30 open sergeant positions.

spondence with the Division, the Police Department stated that this score bypass, referred to in the Amended Complaint as "reaching down," was effectuated "to ensure compliance with current EEOC guidelines, applicable federal and state discrimination laws," *id.*, and to prevent the percentage of "black" sergeants from dropping below 15.18% of all sergeants,[4] *see id.*, Ex. C. In response, Hartnett's office informed the Police Department by letter that such reasons did not justify a bypass and were unacceptable.[5] *See id.*, Ex. D. To implement its desired promotion of the Black Officers in the face of Hartnett's apparent disapproval, the Police Department requested and obtained a Public Safety Civil Service Requisition for six sergeant vacancies in order to promote, in addition to the Black Officers, the "white" candidates who had been bypassed.[6] *See* Am.Compl., Ex. G. Despite the extensive dialogue between the Police Department and Hartnett's office, however, no mention was ever made of the fact that the Police Department eventually promoted the Black Officers scoring 84 to the exclusion of the eight White Officers with the same exam score.

## IV. ANALYSIS

### A. Hartnett's Specific Obligations Under Civil Service Law

■ As the Personnel Administrator of the Human Resources Division, Hartnett is charged with providing eligible lists (based on test scores) of individuals for jobs and promotions in the civil service. *See* Mass.Gen.Laws ch. 31, § 25 (1999). The "ultimate selection" for promotion of civil servants from such lists is left to the "broad" discretion of the appointing authority, in this case the Police Department. *Burns v. Sullivan*, 473 F.Supp. 626, 629 (D.Mass.1979) (Caffrey, C.J.), *aff'd*, 619 F.2d 99 (1st Cir.1980). When, however, the Police Department awards a promotional appointment to an individual "other than the qualified person whose name appears highest" on the list, i.e., a "bypass," the Police Department must "immediately file with [Hartnett] a written statement of ... reasons for appointing the person whose name was not highest." Mass.Gen.Laws ch. 31, § 27 (1999). Hartnett has the power to accept or reject the reasons given by the Police Department for the bypass. *See MacHenry v. Civil Serv. Comm'n*, 40 Mass.App.Ct. 632, 635, 666 N.E.2d 1029 (1996); *Boston Police Dep't v. Campbell*, No. CIV.A. 96–3674–B, 1997 WL 426973, at *1 (Mass.Super.1997) (King, J.). Hartnett relied on this power of rejection when it prevented the Police Department's attempt to promote the Black Officers to the exclusion of "white" candidates with higher test scores.

■ Unlike statutory or regulatory regimes in other jurisdictions,[7] Massachu-

---

4. The Amended Complaint does not precisely indicate the importance of keeping minority representation above 15.18%. A fair inference reveals, however, that the statistical figure is related to a 1978 federal court consent decree that required the Police Department to "reach down" to select minority candidates until specific goals and timetables for promotion of black officers were met. The goals were met and the decree came to an end in 1995. *See generally Boston Police Superior Officers Fed'n v. City of Boston*, 147 F.3d 13, 17 (1st Cir. 1998).

5. The letter stated that the effort to keep the percentage of black sergeants above 15.18% was not acceptable "inasmuch as the consent decree with the Massachusetts Association of Minority Law Enforcement Officers (MAMLEO) is no longer in effect." Am.Compl., Ex. D.

6. By increasing the total number of "white" officers promoted, of course, the percentage of "black" sergeants actually decreased to 14.4%, lower than the 15.18% figure that the Police Department was trying to avoid by "reaching down" in the first place. *See* Am. Compl. ¶ 45.

7. *See, e.g.*, N.J.Stat.Ann. § 40A:14–9.6 (West 1999) ("[A] resident shall be appointed rather than a nonresident thereof in any instance in which the resident and nonresident achieved the same final average score in such test...."); Albuquerque, N.M., Personnel R.

setts civil service law does not explicitly spell out Hartnett's responsibilities when an appointing authority makes a promotional selection among candidates with equal scores on an eligibility list.[8] Hartnett contends that, pursuant to Mass.Gen. Laws ch. 31, § 27, his office can "only exercise[ ] its authority to review an appointing authority's selection of candidates when the authority selects a person with a *lower* score than another candidate on the list ..." and "[i]n this case [the Police Department] selected among candidates who had ... all ranked equally on the eligibility list." Def.Mem. at 11. Despite Hartnett's contention, however, section 27 is *not* triggered by the selection of "a person with a lower score than another candidate." *Id.* (emphasis added). Rather, the statute authorizes Hartnett to review an appointing authority's rationale when it selects somebody "other than the qualified person whose name appears *highest*."[9] Mass.Gen.Laws ch. 31, § 27 (emphasis added). This subtle difference illustrates that section 27 presupposes that there will only be one person for an appointing authority to select, i.e., the highest scoring candidate. Any selection among equally-scoring candidates is therefore a "bypass" because all of their names "appear highest." Accordingly, the appointment of less than an entire group of equally-scoring candidates triggers section 27: i.e., it would appear that the appointing authority must immediately file with Hartnett a written statement of reasons for not appointing the entire group (even if there are not enough openings for all of them). *See id.* Such justifications are subject to Hartnett's review. *See MacHenry,* 40 Mass.App.Ct. at 635, 666 N.E.2d 1029.[10]

## B. *Hartnett's General Obligations Under Civil Service Law*

Even though the Court is confident that section 27 imposes a specific duty upon Hartnett to intervene whenever there is a selection among equally-scoring candidates, Hartnett's more general obligations under the civil service law reveal an additional duty to act in the case at bar. First, under Massachusetts law, Hartnett is required to "evaluate the qualifications of applicants for civil service positions in accordance with *basic merit principles* and ... to administer, enforce, and comply with the civil service law and rules." *MacHenry,* 40 Mass.App.Ct. at 635, 666 N.E.2d 1029 (emphasis added); *accord* Mass.Gen.Laws ch. 31, § 5(a), (c) (1999). Among other things, the term "basic merit

and Regs. R. 231 ("When two or more applicants have the same final score, preference shall be given according to seniority, if no other order of preference has been specified.").

**8.** In addition to the lack of statutory guidance, the Massachusetts courts have yet to consider whether Hartnett has the ability or responsibility to examine promotional selections among equally-scored candidates.

**9.** Hartnett's reliance on the "lower score" language likely stems from the manner in which the Personnel Administration Rules define a "bypass." *See* Personnel Administration Rules PAR. 02 ("Bypass, the selection of a person or persons whose name or names, by reason of score ... appear lower on a certification than a person or persons ... whose names appear higher on said certification.") However, "to the extent that there is a conflict between a statute and a regulation, the statute must prevail over the administrative regulation." *Veksler v. Board of Registration in Dentistry,* 429 Mass. 650, 652, 711 N.E.2d 562 (1999), *quoting Pinecrest Village, Inc. v. MacMillan,* 425 Mass. 70, 73, 679 N.E.2d 216 (1997).

**10.** It must be remembered that the Court is here ruling on a motion to dismiss Hartnett and takes the White Officers' complaint at face value. The litigants' motion papers do not present, and the Court's independent research has not uncovered, any long-standing tie-breaking administrative procedure of either the Division or the Boston Police Department that comports with the civil service law. Should either defendant come forward with such an administrative procedure, support the description with admissible evidence, and demonstrate that the procedure was followed in this case, the Court necessarily will give such administrative procedure appropriate deference.

principles" means (i) "advancing ... employees on the basis of their relative ability, knowledge and skills ...;" (ii) "assuring fair treatment of all applicants and employees in all aspects of personnel administration without regard to ... race [or] color ...;" and (iii) "assuring that all employees are ... protected from arbitrary and capricious action." Mass.Gen.Laws ch. 31, § 1 (1999). Since the allegations illustrate that Hartnett was aware—and disapproved—of the Police Department's intent to promote the Black Officers on the basis of race, his failure to require the Police Department to justify the eventual promotion of the Black Officers to the exclusion of the equally-scoring White Officers does not comport with basic merit principles. Hartnett failed to assure "fair treatment ... without regard to race" and protect the White Officers from "arbitrary and capricious action."

Second, Hartnett has the authority "[t]o approve or disapprove specifications and qualifications *submitted* by an appointing authority ... for any civil service position ... and, in the case of any disapproval, to establish such specifications and qualifications when, in his opinion, the appointing authority has failed to furnish *satisfactory* specifications and qualifications...." *Id.* § 5(c) (emphasis added). Even if section 27 did not require the Police Department to "submit" its reasons for promoting the Black Officers over the equally-scoring White Officers, the Police Department essentially made such submissions in the course of detailing its race-based reasons for promoting the Black Officers over the higher-scoring "white" candidates. Under the basic merit principles, such justifications are hardly "satisfactory" and Hartnett was required to disapprove and establish satisfactory qualifications and specifications.

 Third, Hartnett has the authority "[t]o evaluate the qualifications of applicants for civil service positions." *Id.* § 5(d). This broad grant of discretion, which might not normally require evalua-

tion of a promotional selection among equally-scoring candidates, is triggered when—as is the case here—Hartnett knows that race is the primary qualification of a selected applicant. In light of these three general statutory obligations, Hartnett's attempt simply to shrug off his authority to prevent what is alleged to be a known and admittedly race-based appointment policy—one that is clearly violative of basic merit principles—is unacceptable.

## V. CONCLUSION

At the most, in the absence of any valid tie-breaking administrative procedure, Hartnett is always required to treat any decision to promote less than an entire group of equally-scoring candidates as a bypass under section 27 and subsequently to reject the use of race as a "reason for appointing the person whose name was not highest." *Id.* § 27. At the least, in the case at bar, Hartnett was required to (i) reject submitted qualifications that are unsatisfactory, even if the submission of such qualifications was not required, and (ii) evaluate promotional selections when he knows that such selections do not comport with basic merit principles. *See id.* § 5(c), (d). In either event, the alleged facts reveal that Hartnett possessed and violated a duty to protect the White Officers from "unfair treatment" and "arbitrary and capricious action." *Id.* § 1. Since section 1983 authorizes liability on the basis of omissions, *see Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir. 1994), and Hartnett was authorized to prevent the alleged deprivation of the White Officers' constitutional rights by the Police Department, this Court DENIES Hartnett's motion to dismiss. [Docket No. 14].