APPEALS COURT 
 
 KATHERINE DANT & another[1] vs. MOBILE HOME RENT CONTROL BOARD OF CHICOPEE & another[2]

 
 Docket:
 24-P-857
 
 
 Dates:
 April 8, 2025 – August 15, 2025
 
 
 Present:
 Massing, Englander, & D'Angelo, JJ.
 
 
 County:
 Hampden
 

 
 Keywords:
 Mobile Home. Rent Control, Mobile home, Rent increase. Sewer. Attorney General. Regulation. Statute, Construction. Practice, Civil, Judgment on the pleadings, Reconsideration, Review of action of rent control board.
 
 

       Civil action commenced in the Western
Division of the Housing Court Department on June 28, 2022. 
      The case was heard by Jonathan J. Kane,
J., on motions for judgment on the pleadings, and a motion for reconsideration
was also heard by him.
      Daniel Ordorica for the plaintiffs.
      Timothy J. Ryan for the defendant.
      John Moran for the intervener.
      Andrea Joy Campbell, Attorney General,
& Ellen J. Peterson, Assistant Attorney General, for the Attorney General,
amicus curiae, submitted a brief.
      ENGLANDER, J.  In 2022, the defendant intervener, M & S
Bluebird, Inc. (M & S Bluebird, or owner), the owner of Bluebird Acres, a
manufactured housing park located in the city of Chicopee (park), sought and
obtained a substantial across-the-board increase in its rent charges from the
defendant City of Chicopee Mobile Home Rent Control Board (board).  The basis for the rent increase was
additional expenses that the owner would incur because it was required to
connect the park's residents, its tenants, to the Chicopee public sewer
system.  
      The board's enabling legislation sets
forth a specific formula for determining rents, which formula establishes a
defined rate of return above a park's "reasonable operating
expenses."  See St. 1977,
c. 596, § 3 (a) (c. 596). 
The plaintiffs, two residents of the park, objected to the rent increase
and appealed the board's decision under G. L. c. 30A.  The plaintiffs argued that the rent increase
violated regulations of the Attorney General that state that it is an unfair or
deceptive act or practice in violation of G. L. c. 93A for a manufactured
housing community operator "to seek to recover costs or expenses resulting
from any legal obligation of the operator to upgrade . . . sewer
. . . systems to meet minimum standards required by law."  940 Code Mass. Regs. § 10.03(2)(m)
(1996).[3]  The plaintiffs accordingly
contended that the board was barred from using the sewer expenses at issue as a
basis for increasing rents.  
      A Housing Court judge rejected the
plaintiffs' challenge, concluding that the Attorney General's regulations
"d[id] not apply."  We do not
agree that § 10.03(2)(m) "do[es] not apply" in the rent control
context.  Rather, the question before us
requires us to construe the enabling legislation for the rent control board,
and the Attorney General regulations, and to determine if they are in conflict
and harmonize them if reasonable.  Cf.
School Comm. of Newton v. Newton Sch. Custodians Ass'n, Local 454, SEIU, 438
Mass. 739, 751 (2003) ("In the absence of explicit legislative commands to
the contrary, we construe statutes to harmonize and not to undercut each
other").
      As discussed below, we conclude that as to
one of the sewer expenses at issue -- the future and ongoing costs for using
the city's sewer system -- the board's enabling legislation and the Attorney
General's regulations are not in conflict, but rather can be harmonized such
that sewer usage costs can be a basis for rent increases through the
board.  As to the second cost, however --
the betterment charge for the city's new pumping station -- the rent control
legislation and the Attorney General regulations appear to be in conflict.  Accordingly, as to the betterment charge, we
remand the matter to the board for further evaluation of whether those charges
constitute "reasonable operating expenses" under the circumstances.
      Background.  The park, which consists of 170 lots, has
been in operation for around sixty years, operated for much of that time by the
Grochmal family and its company, M & S Bluebird.  The Grochmals sold the park in 2013, and
repurchased it in 2016.  
      Beginning in the 1970s, the park used a
septic system to handle sewage.  By the
time the owner repurchased the park in 2016, the septic system was
failing.  The Massachusetts Department of
Environmental Protection (Mass DEP) advised the owner that even a fully
compliant upgrade to the septic system would be sufficient for only seventeen
lots under Title 5 of the State environmental code (310 Code Mass. Regs.
§§ 15.000 [2016]).  Accordingly,
Mass DEP and the owner entered into a consent order, which evidently required
the owner to connect the park to the city sewer system.  
      By 2022, the owner had begun the
conversion to sewer, and anticipated finishing the work in 2023.  The costs associated with the new sewerage
arrangement had three components.  First,
a pumping station was required in order for sewage to flow out of the park,
which cost over $2 million.  The city of
Chicopee installed and paid for the pumping station, and then assessed the
owner a "betterment fee" of $1.1 million to be paid over twenty years,
or $55,000 yearly (exclusive of interest). 
Second, costs arose from connecting the park to the sewer system,
including installing sewer pipes, connecting pipes to individual lots, and
resurfacing the roads after installation, totaling approximately $875,000.  Third, there were anticipated future charges
for the use of the sewer system; these charges were estimated to be $156,310
yearly.  
      In January of 2022, the park submitted a
request for a rent increase to the board. 
The board was established pursuant to special legislation, enacted in
1977.  See c. 596.  Under § 3 (a) of that statute, the board 
"may make
such individual or general adjustments . . . as may be necessary to
assure that rents for mobile home park accommodations in the city
. . . yield to owners a fair net operating income for such
units.  Fair net operating income shall
be that income which will yield a return, after all reasonable operating
expenses, on the fair market value of the property equal to the debt service
rate generally available from institutional first mortgage lenders
. . ." (emphasis added).
      Pursuant to the above formula, the board
had previously set the rent at $296 monthly. 
In 2022, the park sought a $120 increase in monthly rent, to be
implemented over time.  This increase
derived in large part from two of the three costs identified above:  (1) the anticipated sewerage usage charges,
and (2) the betterment charge.  Notably,
the park did not seek an increase based on the cost of the connection
infrastructure.  
      Two residents of the park, plaintiffs Dant
and DeLonge, objected to the proposed increase before the board, arguing that
940 Code Mass. Regs. § 10.03(2)(m) prohibited the board from including the
costs resulting from the sewer upgrade. 
The board ultimately included the costs, however, increasing the monthly
rent from $296 to $416.  
      The residents then filed a complaint in
the Housing Court seeking judicial review under G. L. c. 30A, and
requesting a declaratory judgment under G. L. c. 231A that the
increase was unlawful.  The residents
renewed their argument that § 10.03(2)(m) forbade the board from including
the betterment and sewerage usage fees as "reasonable operating
expenses" of the owner.  The Housing
Court judge entered judgment for the board and owner, holding that the Attorney
General's regulations "do not apply" to manufactured housing
communities subject to rent control.[4] 
This appeal followed.
      Discussion.  The question is whether it was lawful for the
board to include the two sewerage costs at issue as "operating
expenses" in determining the park's rent -- or whether, as the plaintiffs
urge, the inclusion of these costs violated G. L. c. 93A.  There are two provisions of law at issue --
the board's enabling statute, duly enacted as special legislation in 1977, and
the Attorney General regulations, duly promulgated in 1996.[5]  See c. 596; 940 Code Mass. Regs.
§§ 10.00.  No party questions the
validity of either provision.  The key
language of the statute establishes the formula for determining rent, which is
designed to "yield to owners a fair net operating income" for mobile
home parks.  See c. 596,
§ 3 (a).  "Fair net
operating income," in turn, is defined as "that income which will
yield a return, after all reasonable operating expenses, on the fair market
value of the property equal to the debt service rate generally available from
institutional first mortgage lenders" (emphasis added).  Id.  As
for the Attorney General regulation, it addresses the "costs or
expenses" that manufactured housing park operators can charge residents;
it prohibits operators from seeking to "recover costs or expenses
resulting from any legal obligation . . . to upgrade . . .
sewer . . . systems."  940
Code Mass. Regs. § 10.03(2)(m).
      As indicated, the plaintiffs argue that
the anticipated future charges for the use of the city's sewer system, as well
as the betterment charge, are each "costs or expenses resulting from"
a "legal obligation . . . to upgrade . . . sewer"
-- and thus that the board was precluded from including them as a basis for
increasing rent.  The board and the
owner, on the other hand, argue that the regulation in essence does not matter
-- because the enabling statute granted the board the power to include each of
the costs as "reasonable operating expenses" under the statute's formula.  The board's position is that if the Attorney
General regulations conflict with the board's enabling legislation, then the
enabling legislation wins out. 
Perhaps.  Certainly, in the case
of an irreconcilable conflict between a statute and a regulation, it is the
statute that must be followed.  See
Veksler v. Board of Registration in Dentistry, 429 Mass. 650, 652 (1999),
quoting Pinecrest Village, Inc. v. MacMillan, 425 Mass. 70, 73 (1997)
("[T]o the extent that there is a conflict [between a statute and a
regulation], the statute must prevail over the administrative
regulation").  On the other hand, we
are mindful that where two statutes are said to conflict, our first task is to
determine whether the two can be harmonized, and that principle should apply as
well where the allegedly conflicting laws are a statute and a regulation.  See School Comm. of Newton, 438 Mass. at 751
(rule is to construe statutes to harmonize in absence of contrary legislative
commands).  See also DeCosmo v. Blue Tarp
Redev., LLC, 487 Mass. 690, 697-698 (2021) (courts should attempt to harmonize
apparently conflicting administrative rules). 
We consider the board's actions here with those basic principles in
mind.  Our review is for whether the
board acted arbitrarily or capriciously, or committed other error of law.  See Ten Local Citizen Group v. New England
Wind, LLC, 457 Mass. 222, 228 (2010) ("Under G. L. c. 30A,
§ 14 (7), we review an agency's decision to determine whether it was
not supported by substantial evidence, was arbitrary or capricious, or was
otherwise based on an error of law"). 
See also c. 596, § 4 (provisions of c. 30A applicable to
board).
      At the outset, the contention that the
Attorney General's manufactured housing regulations "do not apply" in
those communities that have mobile home rent control boards is incorrect.  The regulations are duly promulgated and
apply across the Commonwealth.  The
purpose of the regulations is to define certain acts as unfair and deceptive
when performed by an operator of "any manufactured housing community"
(emphasis added).  940 Code Mass. Regs.
§§ 10.01 and 10.02.  The regulations
address many types of unfair and deceptive practices affecting manufactured
housing parks; they are not limited to the one regulation at issue here.  There is no provision that states that the
regulations do not apply in rent control communities, nor are we aware of any
policy that would suggest such a limitation. 
Indeed, there are regulations that specifically address certain unfair
and deceptive practices in rent controlled communities.  See, e.g., 940 Code Mass. Regs.
§ 10.02(7) (operator in rent control jurisdiction may not increase rent
except as permitted by rent control law). 

      That the regulations apply, however, does
not at all resolve whether the charges at issue could properly be included in
the board's expense base for determining rents. 
In addressing that issue, we think it useful to consider the two charges
separately.  As to the $156,310 per year
charge for future sewer usage, that charge qualifies as a "reasonable
operating expense" under the board's enabling statute.  Indeed, the cost of the park's future use of
the city's sewer system is a classic operating expense -- it is a necessary
expense of doing business, incurred regularly. 
It is not different in kind than other utility costs such as electricity
or water.  See Lindheimer v. Illinois
Bell Tel. Co., 292 U.S. 151, 167 (1934) (in context of determining reasonable
rate of return for public service, "operating expenses" are
"cost of producing the service").
      The board accordingly was directed by
statute to include the reasonable sewerage cost in the operating expenses
considered when determining rent. 
Moreover, as to this charge we perceive no conflict with the Attorney
General regulation.  A future, recurring
cost for use of a sewer system is not an expense "resulting from" the
legal obligation to upgrade.  As we read
the regulation, it prevents the pass through of certain capital costs -- such
as the expense of building a new system or overhauling an old one; it does not
prevent the recovery of charges from providing a necessary service.  Such charges (provided they are reasonable)
do not "result from" the upgrade; they result from the necessity of
supplying sewer service to the residents, a necessity that preceded the upgrade
and exists independently of it. 
Accordingly, as to the sewer usage charges we perceive no conflict
between the board's enabling statute and the regulation, and that charge was properly
included in the board's operating expense base.
      The betterment charge presents a different
case.  On the one hand, the board decided
to include the betterment charge as a "reasonable operating expense"
of the park.  On the other hand, the
betterment charge is in fact a cost of the upgrade of the park's sewage
disposal system; it is not contested that the pumping station was required to
connect the park to the city's sewer system, and that the betterment charge was
a condition to the building of the pumping station.  The pumping station is unlike the charge for
future sewer usage.  It is in fact the
"upgrade" to the system, and including the charge for the pumping
station in the expense base appears to be inconsistent with the Attorney General's
regulation.[6]
      Accordingly, as to the betterment charge
there may well be a conflict between the board's enabling statute and the
Attorney General's regulation.  As noted
above, if there is such a conflict then the regulation must yield to the
statute, and the board's inclusion of the charge would be affirmed.  See Veksler, 429 Mass. at 652.  On the present record, however, we are not
confident that the board's decision reflects consideration of the proper legal
framework.  Under the enabling statute,
the board is directed to consider all "reasonable operating expenses"
of the park.  See c. 596,
§ 3 (a).  The board's decision
does not address what is an "operating expense" for these purposes, or
why the betterment charge qualifies.  We
assume that one-time capital charges would not qualify as an "operating
expense," although we also expect that appropriately amortized capital
costs -- that is, a charge for the depreciation of capital assets over time --
would need to be included in the expense base.[7]  See Lindheimer, 292 U.S. at 167 ("In
determining reasonable rates for supplying public service, it is proper to
include in the operating expenses . . . an allowance for consumption
of capital").  These are
considerations as to which the board has considerable discretion, see Marshal
House, Inc. v. Rent Control Bd. of Brookline, 358 Mass. 686, 706 (1971)
("fair net operating income" as used in rent control statute with
identical language is flexible definition, "consistent with the overriding
requirement of a reasonable return on investment"), but here the board did
not explain its reasoning in including the charges.[8]  There is the possibility, as well, that the
board accepted the (incorrect) argument that the Attorney General regulations
did not apply, and thus applied incorrect law. 
We accordingly vacate the judgment as it applies to the betterment
charge, so that the board may reconsider and explain its decision in light of
this opinion.[9],[10]  In all other
respects, the judgment is affirmed and the order denying the plaintiffs' motion
for reconsideration is affirmed.[11]
So ordered.

footnotes

[1] Cindy
DeLonge.

[2] M & S
Bluebird, Inc., intervener.  

[3]
Section 10.03(2)(m) states in pertinent part:   
"It shall be
an unfair or deceptive act or practice in violation of [G. L.] c. 93A, §
2, for an operator:
". . .
"(m) to seek
to recover costs or expenses resulting from any legal obligation of the
operator to upgrade or repair sewer, water, gas, or electrical systems to meet
minimum standards required by law, unless such standards first become effective
after a tenant has initially assumed residency in a manufactured housing
community and unless such costs are recovered as capital improvements in
accordance with 940 [Code Mass. Regs. §] 10.03(2)(l) . . . ."

[4] The parties
filed cross motions for reconsideration. 
Aside from an adjustment to the timing of the rental increases, the
judge denied the motions.  Although the
plaintiffs' notice of appeal included both the judgment and the denial of their
motion for reconsideration, the plaintiffs make no separate argument on appeal
as to their motion for reconsideration and we, therefore, consider it
waived.  See
Mass. R. A. P. 16 (a) (9) (A), as appearing in
481 Mass. 1628 (2019).

[5] The Attorney
General is authorized by G. L. c. 140, § 32S, to promulgate
rules and regulations " necessary for the interpretation, implementation,
administration and enforcement of [the Manufactured Housing Act]."  The Attorney General's authority to
promulgate such regulations is "in addition to, and not in derogation of,
the attorney general's authority to promulgate rules and regulations under
[G. L. c. 93A, § 2,] with respect to manufactured housing
communities."  Id.

[6] It does not
matter for purposes of our analysis that the pumping station is owned by the
city rather than the park.  Under the
circumstances, the betterment charge that the city assessed "resulted
from" the park's legal obligation to connect to the sewer system, and
accordingly would fall within the language of the Attorney General's
regulation.

[7] Relatedly,
the Attorney General regulations forbid operators from passing on the costs of
capital improvements to their tenants as lump-sum charges, but allow operators
to recover the amortized costs of such improvements if certain conditions are
met.  See 940 Code Mass. Regs.
§ 10.03(2)(l).  We note that the
Attorney General has published a "guide" to the Manufactured Housing
Community Law, which indicates that the Attorney General regulations
"generally allow a community owner/operator to recover the cost of
improvements over time through rent increases."  See The Attorney General's Guide to
Manufactured Housing Community Law 27 (Nov. 2017).

[8] The
plaintiffs argue that a charge that violates the Attorney General regulations
must be considered "unreasonable" for purposes of the rent control
statute essentially as a matter of law. 
The contention proves too much, as it would have the regulation, in
essence, redefine the language of the preexisting statute.  Cf. Veksler, 429 Mass. at 652.
We
note as well that while the plaintiffs' argument assumes that the Mass DEP
sewage disposal requirements at issue were effective and applicable before the
plaintiffs came to the park, the board made no findings on this issue, which
would be critical to the application of the regulation.

[9] At oral
argument, the plaintiffs presented their c. 93A argument as premised upon
a "bait and switch" -- that is, the gist of their position at
argument was that the plaintiffs had moved to the park under false pretenses,
because the operator knew that the septic system would have to be upgraded and
that rents would therefore increase.  We
note that this is not the unfair and deceptive practice theory that was
presented to the board, it is not the theory in the administrative record for
the c. 30A appeal, and it was not pleaded in the complaint.  The theory is not properly before us.  See Doe, Sex Offender Registry Bd. No. 10800
v. Sex Offender Registry Bd., 459 Mass. 603, 630 (2011) (in appeal from agency
decision, judicial review confined to administrative record).

[10] Our opinion
herein is not intended to suggest any particular outcome on remand.

[11] The owner's
request for attorney's fees is denied.