ESTHER PINA *vs.* COMMONWEALTH.

Suffolk. March 3, 1987 — July 9, 1987.

Present: HENNESSEY, C.J., LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Massachusetts Tort Claims Act. Governmental Immunity. Actionable Tort. Negligence,* Social security disability determination. *Social Security Act. Commonwealth,* Liability for tort.

State employees who evaluated and processed a claim for Social Security disability insurance benefits were performing a "discretionary function" within the meaning of § 10 (*b*) of G. L. c. 258 (the Massachusetts Tort Claims Act) and, consequently, those employees' alleged negligence, resulting in an erroneous determination that a certain recipient of benefits had ceased to be disabled, gave rise to no cause of action by that individual against the Commonwealth for her physical and emotional distress and economic loss. [412-416]

CIVIL ACTION commenced in the Superior Court Department on August 6, 1985.

A motion for judgment on the pleadings was heard by *John F. Moriarty,* J., and questions of law were reported by him to the Appeals Court. The Supreme Judicial Court granted a request for direct review.

*Richard K. Latimer* for the plaintiff.

° *Douglas H. Wilkins,* Assistant Attorney General (*Nancy F. Earsy* with him) for the Commonwealth.

LIACOS, J. On August 6, 1985, the plaintiff, Esther Pina, brought this action under the Massachusetts Tort Claims Act (Act). G. L. c. 258, § 1 (1984 ed.). She seeks to recover damages allegedly sustained as a result of a determination by employees of the Commonwealth's Office of Disability Determination Services (DDS) that she had ceased to be disabled. Under that determination she would be ineligible to continue to receive disability insurance benefits from the Social Security

Administration of the United States Department of Health and Human Services.[1] The plaintiff alleges that negligence and other wrongful conduct on the part of DDS employees in terminating her benefits caused her "great physical harm, emotional distress and other economic loss."[2]

On August 4, 1986, the Commonwealth moved for judgment on the pleadings on the grounds that (1) the facts alleged show no duty owed to plaintiff; (2) the action is precluded and preempted by Federal law. Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974). In the alternative, the Commonwealth moved that the issues raised by its motion be reserved and reported to the Appeals Court. On August 29, 1986, a Superior Court judge denied the Commonwealth's motion for judgment on the pleadings, and reported three questions to the Appeals Court: "(1) Is [the] order denying the defendant's motion for judgment on the pleadings correct as a matter of law? (2) Assuming the truth of all the facts alleged in the complaint, did the state employees who reviewed the plaintiff's disability status owe her a duty of due care in conducting that review and in making their determination, in addition to the duty they owed to the general public? (3) Assuming the truth of all the facts alleged in the complaint, does 42 U.S.C. § 405 (g) (h) deprive this court of jurisdiction or otherwise bar this action?"

We allowed the Commonwealth's application for direct appellate review. Mass. R. A. P. 11, as amended, 378 Mass. 938 (1979). We set aside the order denying the Commonwealth's motion for judgment on the pleadings. Our answer to question no. 1 is, "No." If we assume question no. 2 to ask whether the challenged determination to discontinue plaintiff's disability benefits falls within the intended scope of the Act, our answer is, "No." We find it unnecessary to consider question no. 3.

---

[1] Completely disabled workers receive benefits under the disability insurance benefits program created by the 1956 amendments to Title II of the Social Security Act. 70 Stat. 815, 42 U.S.C. § 423 (1982). *Mathews* v. *Eldridge,* 424 U.S. 319, 323 (1976).

[2] The plaintiff raises no constitutional challenge to the administrative procedures for review of her continued eligibility for disability benefits.

These are the relevant facts alleged in the plaintiff's complaint. The plaintiff first was awarded benefits in October, 1975, when the Social Security Administration (SSA) determined that she was disabled as a result of a severe illness. Her "disability income and health care benefits" continued for approximately seven years. In September, 1982, DDS employees reviewed her status pursuant to an agreement between the Commonwealth and the SSA.[3] A determination was made that the plaintiff was no longer disabled. Her benefits were discontinued as of September 1, 1982.[4] The plaintiff timely requested reconsideration. The DDS confirmed, in December, 1982, that she was no longer disabled. The plaintiff appealed to a Federal administrative law judge of SSA's office of hearings and appeals, who, in February, 1983, found that she continued to be disabled for purposes of the Social Security Act.[5] Her benefits were restored retroactively and have continued to the present time.

The plaintiff alleges that DDS's initial determination and decision on reconsideration were made "in a negligent manner" and lacked the "degree of diligence and due care owing to the claimant on review and processing of the claim."[6] She argues

---

[3] "The disability insurance program is administered jointly by state and federal agencies. State agencies make the initial determination whether a disability exists, when it began, and when it ceased. 42 U.S.C. § 421 (a). The standards applied and the procedures followed are prescribed by the Secretary [of the United States Department of Health and Human Services (HHS)], see § 421 (b), who has delegated his responsibilities and powers under the Act to the SSA." *Mathews* v. *Eldridge, supra* at 335.

The State enabling statute, G. L. c. 6, § 80, second par. (1984 ed.), authorizes the Massachusetts Rehabilitation Commission to enter into agreement with the Federal government to perform disability determinations. The DDS performs this function.

[4] This allegation in the plaintiff's complaint is ambiguous. If a State agency review results in a determination by the United States Secretary of Health and Human Services (Secretary) that disability has ceased, benefits do not stop until the "third month following the month in which [the recipient's] disability ceases." 42 U.S.C. § 423 (a) (1) (1982). 20 C.F.R. § 404.316 (b) (1986).

[5] Administrative appeals from DDS determinations go to a Federal administrative law judge; judicial appeals from the Secretary's decision go to a Federal District Court. 42 U.S.C. § 405 (g) (1982).

[6] The Commonwealth, for purposes of this motion, has admitted the plaintiff's allegations.

that the State employees provided only a brief and cursory review of her medical records; failed to develop proper medical documentation; failed to provide her with a full opportunity to furnish additional medical records; and failed to follow the express requirements of SSA regulations for evaluating and processing claims.

The plaintiff further alleges that the negligent evaluation and processing of her claim rendered her "unable to continue with necessary medical treatment" from September, 1982, through March, 1983, and hence caused her to suffer great physical and emotional distress, as well as economic loss, over and above her temporary loss of income benefits. She seeks, in addition to the retroactive benefits already received, damages in the amount of $100,000, plus interest and costs of this action.

The judge found that a special relationship exists between a specifically identified individual whose disability status is being reviewed for purposes of the Social Security Act and the public employees conducting that review. Because of that special relationship, the judge concluded, "[T]he public employees owe a duty to such individuals over and above the duty they owe to the public at large — a duty to exercise due care in conducting their review and in forming their conclusions."

The relationship between an individual whose disability is being reviewed for purposes of the Social Security Act and the public employees conducting that review is governed in the first instance by the comprehensive Federal statutory scheme which governs the award, denial, and renewal of Social Security disability insurance benefits. 42 U.S.C. §§ 401 et seq. (1982). In order to qualify for disability benefits, an individual must demonstrate that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416 (i) (1) (A) (1982).

Once found to be disabled, an individual is subject to periodic review, "for purposes of continuing eligibility, at least once

every 3 years." 42 U.S.C. § 421 (h) (1), as amended through
Pub. L. No. 96-265, § 311 (a). The reviews are conducted by
the Secretary of HHS or, in States like Massachusetts that have
elected to do so, by State agency personnel. The HHS regula-
tions require an evidentiary hearing before a Federal adminis-
trative law judge whenever a State agency finds a claimant's
impairment to have ceased. 20 C.F.R. § 404.929 ff. If the
administrative law judge finds the claimant to be disabled, full
retroactive benefits are awarded.

General Laws c. 258, the Massachusetts Tort Claims Act,
provides that "[p]ublic employers shall be liable for injury or
loss of property or personal injury or death caused by the
negligent or wrongful act or omission of any public employee
while acting within the scope of his office or employment, in
the same manner and to the same extent as a private individual
under like circumstances," subject to certain limitations. G. L.
c. 258, § 2 (1984 ed.). Exempted from such liability, however,
is "any claim based upon the exercise or performance or the
failure to exercise or perform a discretionary function or duty
on the part of a public employer or public employee, acting
within the scope of his office or employment, whether or not
the discretion involved is abused." G. L. c. 258, § 10 (b)
(1984 ed.).

The threshold inquiry, therefore, is whether the challenged
determination by the DDS employees falls outside the Act as
a "discretionary function" within the meaning of G. L. c. 258,
§ 10 (b). See Irwin v. Ware, 392 Mass. 745, 752-754 (1984).
To determine "the intended scope of G. L. c. 258 § 10 (b),"
id. at 753, and "whether the discretionary function exception
applies in this case," Patrazza v. Commonwealth, 398 Mass.
464, 467 (1986), we look to the language of Whitney v. Wor-
cester, 373 Mass. 208 (1977).[7] Irwin v. Commissioner of Youth
Servs., 388 Mass. 810, 817 (1983).

In Whitney v. Worcester, supra, "an opinion which played
a major role as an incentive to the Legislature to enact the Tort

---

[7] For analysis of the provisions of G. L. c. 258 prior to the reforms which
followed Whitney v. Worcester, supra, see Narine v. Powers, ante 343
(1987).

Claims Act," *Cady* v. *Plymouth-Carver Regional School Dist.,* 17 Mass. App. Ct. 211, 213 (1983), "we stress[ed] that abrogation of governmental immunity need not necessarily mean that governmental entities would be liable for all harm which results from the conduct of their activities." *Whitney* v. *Worcester, supra* at 212. We indicated that the following inquiries would be relevant on a case-by-case basis: "Was the injury-producing conduct an integral part of governmental policymaking or planning? Might the imposition of tort liability jeopardize the quality and efficiency of the governmental process? Could a judge or jury review the conduct in question without usurping the power and responsibility of the legislative or executive branches? Is there an alternate remedy available to the injured individual other than an action for damages?" *Id.* at 219. All but the first inquiry aid our analysis in this case. The "quality and efficiency of the governmental process" requires, at a minimum, impartiality on the part of State employees. Under the Social Security Act, as under any other benefits program, proper claims should be allowed; improper claims should be denied. Imposing the threat of tort liability for denied claims with no countervailing threat for approved claims would jeopardize the public policy "that the administration of justice may be independent, based upon free and unbiased convictions and not influenced by apprehension of personal consequences." *Joyce* v. *Hickey,* 337 Mass. 118, 121 (1958), quoting *Allard* v. *Estes,* 292 Mass. 187, 189-190 (1935).

Were the plaintiff's view to prevail in this case, not only would the impartiality of individual determinations be threatened, but the integrity of the over-all administrative review process would be undermined as well. The imposition of tort liability for alleged negligent decisionmaking, particularly at an interlocutory stage of the proceedings, would turn the Act into a vehicle to award damages from the Commonwealth for the consequences of the express statutory provisions of a benefits program as enacted by Congress. Notwithstanding the legislative provision that, pending an evidentiary hearing, benefits were not to be paid during the period in question, the plaintiff would make the Commonwealth liable as an insurer

for the consequences of the Federal scheme. If we were to accept the plaintiff's interpretation, despite the appeals procedures set forth in the Social Security Act, it would appear that any individual who was unsuccessful at any stage of an administrative or quasi judicial proceeding, but who ultimately prevailed, could sue for damages under the Act.

Additionally, there is obviously "an alternate remedy available to the injured individual other than an action for damages," *Whitney* v. *Worcester, supra* — the statutorily provided appeal process through which the plaintiff in fact had her benefits restored.[8]

The Act is modeled closely on the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (1982). *Vasys* v. *Metropolitan Dist. Comm'n,* 387 Mass. 51, 54 (1982). In construing the Act, we normally look for assistance from the Federal courts' treatment of cognate provisions of the Federal Tort Claims Act. *Kelley* v. *Rossi,* 395 Mass. 659, 662 n.4 (1985). In *Whitney* v. *Worcester, supra* at 217, we noted the similar, but not identical, exception for discretionary functions set forth in 28 U.S.C. § 2680(a) for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government."

The United States Supreme Court recently discussed the discretionary function exception in *United States* v. *Varig Airlines,* 467 U.S. 797, 811-812 (1984). The Court reaffirmed the analysis of the leading case of *Dalehite* v. *United States,* 346 U.S. 15, 35-36 (1953): "It is unnecessary to define, apart from this case, precisely where discretion ends. It is enough to hold, as we do, that the 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. *It necessarily follows that acts of subordinates*

---

[8] See text, *supra* at 410 and 412, and note 5, *supra.*

*in carrying out the operations of government in accordance with official directions cannot be actionable"* (emphasis supplied). (Footnotes omitted.)

The Federal courts have interpreted the Supreme Court's language in *Varig Airlines* "to dictate that the exemption under the Federal Tort Claims Act derived from this discretion extends to specific individual applications as well as to broad policies." *Flammia* v. *United States*, 739 F.2d 202, 204 (5th Cir. 1984). Accord *Wendler* v. *United States*, 606 F. Supp. 148, 150 (D. Kan.), aff'd, 782 F.2d 853 (10th Cir. 1985). Indeed, one Federal court described discretionary functions as "those in which a government official determines what action to take based on an individual, case-by-case analysis and in which his decision includes elements of judgment and discretion." *Bartel* v. *FAA*, 617 F. Supp. 190, 196 n.29 (D.C. 1985), citing *Dalehite* v. *United States, supra*.

The concern that the judicial process not usurp the power and responsibility of the executive branch, which we voiced in *Whitney* v. *Worcester, supra* at 219, is mirrored in the Supreme Court's analysis in *Varig Airlines, supra* at 814. "[A]n underlying basis for the inclusion of an exception for discretionary functions in the Act," was Congress's wish "to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Or, as the Appeals Court put it in *Cady* v. *Plymouth-Carver Regional School Dist., supra* at 215, citing *Beins* v. *United States,* 695 F.2d 591, 600 (D.C. Cir. 1982), "The policy behind the exception is to avoid allowing tort actions to be used as a monkey wrench in the machinery of government decision making."

In our view, imposing tort liability at the stage plaintiff here requests would throw just such a "monkey wrench" into the machinery of disability determinations under the Social Security Act. Because we conclude that the challenged determinaton fell outside the intended scope of the Act by virtue of the § 10(*b*) exclusion, we answer question no. 1, "No,"

and question No. 2, as we have interpreted it, "No."[9] There-
fore, we need not reach the issue of Federal preemption posed
in question no. 3.

The case is remanded for entry of an order allowing the
defendant's motion for judgment on the pleadings.

*So ordered.*

---

[9] We believe it unreasonable to conclude that the Legislature intended to
include within the scope of the Act decisions of State employees acting for
the Federal Secretary of Health and Human Services, pursuant to standards
and procedures prescribed by that Federal agency.

While our analysis of the threshold question under § 10 (*b*) of the Act
makes it unnecessary to reach the question whether the employees owed a
duty of care to the plaintiff individually, we note that none of the cases
discussed by the motion judge (*Dinsky* v. *Framingham,* 386 Mass. 801
[1982]; *Irwin* v. *Ware, supra; Ribeiro* v. *Granby,* 395 Mass. 608 [1985];
*Nickerson* v. *Commonwealth,* 397 Mass. 476 [1986]; *Appleton* v. *Hudson,*
397 Mass. 812 [1986]; or *Connerty* v. *Metropolitan Dist. Comm'n,* 398
Mass. 140 [1986]) involved the kind of administrative process or quasi
judicial determination challenged in this case. As we noted in *Connerty* v.
*Metropolitan Dist. Comm'n, supra* at 146, "the existence of elaborate ad-
ministrative mechanisms for review of the environmental impact of publicly
funded projects tends to negate any argument that a private remedy in money
damages should be inferred." Not only are "elaborate administrative
mechanisms," *id.,* involved in this case, but, as the United States Supreme
Court observed in *Mathews* v. *Eldridge, supra* at 344 n.28, "The decision
is not purely a question of the accuracy of a medical diagnosis since the
ultimate issue which the state agency must resolve is whether in light of
the particular worker's 'age, education, and work experience' he cannot
'engage in any. . . substantial gainful work which exists in the national
economy . . . .'" 42 U.S.C. § 423 (d) (2) (A) [1982]."