STEPHEN VINING *vs.* COMMONWEALTH.

No. 04-P-835.

Middlesex. March 21, 2005. - June 8, 2005.

Present: KANTROWITZ, SMITH, & GRAHAM, JJ.

*Massachusetts Tort Claims Act. Trial Court,* Court officers. *Personal Property,* Property seized at time of arrest. *Governmental Immunity. Commonwealth,* Liability for tort. *Negligence,* Governmental immunity, Correctional facility. *Statute,* Construction. *Practice, Civil,* Dismissal, Waiver.

In a civil action arising from the loss of the plaintiff's property after he had been arrested, the judge properly dismissed the complaint on the ground that G. L. c. 258, § 10(*d*), exempts from the Commonwealth's waiver of sovereign immunity under the Massachusetts Torts Claims Act any claim arising in respect of the lawful detention of any goods by any law enforcement officer [691-695]; moreover, the judge correctly ruled that the Commonwealth's motion to dismiss on the basis of the immunity accorded by § 10(*d*) was not untimely [696].

In a civil action arising from the loss of the plaintiff's property after he had been arrested, the judge properly concluded that G. L. c. 127, § 3, was inapplicable to the facts of this case, where there was no support in the record for the claim that the plaintiff's property was missing as a result of actions of officials of a correctional institution. [695-696]

CIVIL ACTION commenced in the Superior Court Department on September 12, 2000.

A motion to dismiss was heard by *Judith Fabricant,* J.

*Joseph J. Balliro, Jr.,* for the plaintiff.

*David B. Stanhill,* Assistant Attorney General, for the Commonwealth.

GRAHAM, J. We must decide whether the loss by court officers of property seized from a person in their custody gives rise to a cause of action under the Massachusetts Tort Claims Act (Act), G. L. c. 258. We hold that the exemption in G. L. c. 258, § 10(*d*), precludes recovery against the Commonwealth and affirm the ruling of a judge of the Superior Court dismissing the plaintiff's complaint.

*Background.* On or about September 16, 1998, the plaintiff was arrested and taken into custody by an officer of the Somerville police department. At the booking, an inventory was taken of the plaintiff's personal property, which included two rings and a watch.[1] The plaintiff was subsequently taken to Somerville District Court, where, according to a Somerville police department personal property inventory report, his personal property was transferred.

After his trial, acquittal, and release from custody, the plaintiff sought the return of his property. All of his property was returned except for the rings and the watch, which were never located. On September 12, 2000, the plaintiff filed a complaint in the Superior Court against the city of Somerville, John Doe, and the Commonwealth, alleging that officers of the Commonwealth seized his property with an intent to exercise temporary control over it, but either lost or converted the property while he was in custody.[2]

A judge in the Superior Court dismissed the plaintiff's action against the Commonwealth on the ground that the Commonwealth had not waived its sovereign immunity under the Act's "detention of goods" exception, § 10(*d*). This appeal followed.

*Discussion.* 1. *General Laws, c. 258, § 10(*d*), exception.* The Commonwealth may not be sued unless its sovereign immunity has been waived. See *Irwin* v. *Commissioner of Dept. of Youth Servs.*, 388 Mass. 810, 812 (1983). The Act is such a waiver and grants subject matter jurisdiction to courts of the Commonwealth for claims against governmental entities, which historically have enjoyed sovereign immunity from such claims. General Laws c. 258, § 2, inserted by St. 1978, c. 512, § 15, provides, in relevant part, that "[p]ublic employers shall be liable for . . . loss of property . . . caused by the negligent or wrongful act or omission of any public employee . . . in the same manner and to the same extent as a private individual

---

[1] The plaintiff alleges that the total value of the property is approximately $230,000.

[2] On January 26, 2001, the complaint against John Doe was dismissed, and on June 3, 2003, summary judgment was allowed on behalf of the city of Somerville.

under like circumstances."[3] The Act does not create any new theories of liability, but simply provides that tort actions brought against governmental entities are governed by the same theories of liability that apply to actions involving private parties. *Dinsky* v. *Framingham*, 386 Mass. 801, 804 (1982).

The two major purposes of the Act are "to allow plaintiffs with valid causes of action to recover for harm suffered from public entities," and "to preserve the stability and effectiveness of government by providing a mechanism which will result in payment of only those claims against government entities which are valid." *McGrath* v. *Stanley*, 397 Mass. 775, 778 (1986). The Legislature has made clear that the Act "shall be construed liberally." St. 1978, c. 512, § 18.

The Act's broad waiver of sovereign immunity is, however, subject to certain exceptions, including G. L. c. 258, § 10(*d*), as amended by St. 1993, c. 495, § 57, which bars "*any claim* arising in respect of the assessment or collection of any tax, or the *lawful detention of any goods* or merchandise by any law enforcement officer" (emphasis added). Neither the Supreme Judicial Court nor this court has determined whether "any law enforcement officer" under § 10(*d*) includes court officers. The plaintiff urges us to construe the foregoing language to cover only claims involving "the lawful seizure of money or goods connected to litigation initiated by the Commissioner of the Department of Revenue where a Court or statute has authorized the taking of property." The Commonwealth asks us to read the exception as a broad immunity from any and all claims originating from the lawful detention of property by any law enforcement officer.

The starting point of our analysis of these competing interpretations must, of course, be the language of the statute. We assume that the legislative purpose is expressed by the ordinary meaning of the words used. Courts " 'are constrained to follow' the plain language of a statute when its 'language is plain and unambiguous,' and its application would not lead to an 'absurd result,' or contravene the Legislature's clear intent." *Commissioner of Rev.* v. *Cargill, Inc.*, 429 Mass. 79, 82 (1999),

---

[3]The Commonwealth is a "public employer" as defined in G. L. c. 258, § 1.

quoting from *White* v. *Boston*, 428 Mass. 250, 253 (1998). See *Foss* v. *Commonwealth*, 437 Mass. 584, 586 (2002) (when "statute is clear and unambiguous, [courts] construe the language in accordance with its plain and ordinary meaning"). "Where a statute is ambiguous, we may look to extrinsic circumstances to determine the intent of the Legislature as to its meaning. Accordingly, '[s]tatutes are to be interpreted . . . in connection with their development, their progression through the legislative body, the history of the times, prior legislation, contemporary customs and conditions and the system of positive law of which they are part . . . .' " *EMC Corp.* v. *Commissioner of Rev.*, 433 Mass. 568, 570 (2001), quoting from *Pacific Wool Growers* v. *Commissioner of Corps. & Taxn.*, 305 Mass. 197, 199 (1940).

We find the interpretation urged by the Commonwealth to be persuasive. The language of G. L. c. 258, § 10(*d*), is clear and unambiguous. Section 10(*d*)'s broad language exempts from recovery "*any* claim" arising from the named conduct. "Any" in this context indicates "all" or "every." See Ballentine's Law Dictionary 80 (3d ed. 1969). Accordingly, a public employer is not liable for "any claim" that falls into the delineated conduct.

Further, when § 10(*d*)'s phrase "arising in respect of" is accorded its plain and ordinary meaning, it indicates that the claim "originates" or "stems" from a certain type of conduct. See Black's Law Dictionary 115 (8th ed. 2004). Consequently, if the crux of the plaintiff's complaint refers to an incident or occurrence that originated from the type of conduct delineated in § 10(*d*), the action is barred.

We have long recognized that G. L. c. 258 is modeled closely on the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 et seq. (2000). See *Pina* v. *Commonwealth*, 400 Mass. 408, 414 (1987); *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 142-143 (1992). As such, Federal court decisions construing provisions of the FTCA are helpful in construing the Act. See *Pina* v. *Commonwealth, supra*; *Sena* v. *Commonwealth*, 417 Mass. 250, 255 (1994).

Section 2680(c) of the FTCA provides, in relevant part, that its general waiver of governmental immunity shall not apply to "[a]ny claim arising in respect of the assessment or collection

of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." 28 U.S.C. § 2680(c). The Federal government, therefore, is not liable for "[a]ny claim arising in respect of . . . the detention of any goods . . . by . . . [a] law enforcement officer." In *Kosak* v. *United States*, 465 U.S. 848, 854 (1984), the United States Supreme Court interpreted the phrase "arising in respect of" broadly, stating that " 'any claim arising in respect of' the detention of goods means any claim 'arising out of' the detention of goods, and includes a claim resulting from negligent handling or storage of detained property."

The Court in *Kosak* v. *United States*, however, did not address whether the § 2680(c) exception applies to "law enforcement officer[s]" other than customs officials. *Ibid.* While the Federal courts do not provide clear guidance on this issue, the majority of Federal Circuit Courts of Appeals have read "§ 2680(c) expansively to include federal law enforcement officers beyond those who assess taxes or collect customs duties. See e.g., *Chapa* v. *United States Dept. of Justice*, 339 F.3d 388, 390 (5th Cir. 2003) ([Bureau of Prisons] officers); *Hatten* v. *White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ([Bureau of Prisons] officers); *Halverson* v. *United States*, 972 F.2d 654, 656 (5th Cir. 1992) (Border Patrol officers); *Cheney* v. *United States*, 972 F.2d 247, 248 (8th Cir. 1992) (drug task force agents); *Schrob* v. *Catterson*, 948 F. 2d 1402, 1420 n. 16 (3d Cir. 1991) ([Drug Enforcement Administration] agents); *Schlaebitz* v. *United States Dep't of Justice*, 924 F.2d 193, 195 (11th Cir. 1991) (U.S. Marshals); *Ysasi* v. *Rivkind*, 856 F.2d 1520, 1525 (Fed. Cir. 1988) (Border Patrol officers); *United States* v. *2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1491 (10th Cir. 1984) (USDA inspection agents)." *Bramwell* v. *U.S. Bureau of Prisons*, 348 F.3d 804, 806 (9th Cir. 2003), cert. denied, 125 S. Ct. 45 (2004).

Similar to the majority of the Federal Circuit Courts of Appeals which interpret "law enforcement officer" in the FTCA expansively, we conclude that G. L. c. 258, § 10(*d*), should not be construed narrowly, as the plaintiff urges, to include only law enforcement officials engaged in tax or customs duties or

who are authorized by court order to take custody of property or restrain the transfer of funds in civil actions.

General Laws c. 258, § 10(*d*), operates as a broad grant of immunity from claims originating from the "lawful detention of any goods or merchandise by any law enforcement officer." The plaintiff's suit is such a claim. Where property is lost as a result of negligence of court officers, the Commonwealth is immune because any such loss arose in relation to or out of the lawful detention of property by law enforcement officers.[4]

2. *General Laws c. 127, § 3, claim.* The plaintiff also argues that the judge erred in concluding that G. L. c. 127, § 3,[5] was inapplicable to the facts of this case. He argues that there is no support in the record for the claim that the loss of his merchandise was attributable to court officers and not the officials of the facilities at which he was held. The record, he says, simply reflects the fact that his property was retained when the Commonwealth took custody of his items and not returned to him upon his release; therefore, the Commonwealth, through its correctional system, is responsible for his loss.

The judge properly ruled that G. L. c. 127, § 3, had no application to this case because the record does not support a claim that the plaintiff's property was missing as a result of actions by officials of a "correctional institution." See G. L. c. 125, § 1.[6]

Moreover, the Legislature has made clear that the Act supersedes any contradictory law. See St. 1978, c. 512, § 18

---

[4]To the extent that the plaintiff asserts intentional torts, the Commonwealth is immune from such claims pursuant to G. L. c. 258, § 10(*c*).

[5]Pursuant to G. L. c. 127, § 3, the Commonwealth's superintendents of correctional institutions and superintendents and keepers of jails, houses of correction, and all other penal or reformatory institutions "shall keep a record of all money or other property found in possession of prisoners committed to such institutions, and shall be responsible to the commonwealth for the safe keeping and delivery of said property to said prisoners or their order on their discharge or at any time before."

[6]G. L. c. 125, § 1, inserted by St. 1972, c. 777, § 8, defines "correctional institution" as a "correctional facility" and "correctional facility" as "any building, enclosure, space or structure used for the custody, control and rehabilitation of committed offenders and of such other persons as may be placed in custody therein in accordance with law." Here, however, the plaintiff was an arrestee, not a committed offender, and was not placed in the custody of a correctional facility.

("Any other provision of law inconsistent with any other provisions of [the Act] shall not apply"). General Laws c. 258, § 10(*d*), therefore, supersedes any contradictory statutory provisions. The Act provides the plaintiff's exclusive remedy in tort against the Commonwealth.[7]

3. *Waiver.* Finally, we reject the plaintiff's claim that the Commonwealth's motion to dismiss on the basis of the immunity accorded by G. L. c. 258, § 10(*d*), has been waived because it was untimely. As the statutory exceptions contained in G. L. c. 258, § 10, define the scope of the jurisdiction granted by the Act, the applicability of § 10(*d*) relates to subject matter jurisdiction. Consequently, a § 10 defense is jurisdictional.[8] See *J.A. Sullivan Corp.* v. *Commonwealth*, 397 Mass. 789, 793 (1986) (Commonwealth's abrogation of sovereign immunity is treated as consent to jurisdiction).

Although no Massachusetts case directly addresses the issue whether a defense under G. L. c. 258, § 10, can be waived, it is well established that a defense of subject matter jurisdiction cannot be waived by the parties and may be raised for the first time on appeal or may even be raised by a court sua sponte. See *Commonwealth* v. *DeJesus*, 440 Mass. 147, 151 (2003). Compare *Chapa* v. *United States Dept. of Justice, supra* at 389 (defense of lack of subject matter jurisdiction pursuant to 28 U.S.C. § 2680[c] was not waivable and could be raised at any stage of proceedings). Consequently, the judge correctly ruled that the § 10(*d*) defense can be raised at any time.

*Judgment affirmed.*

---

[7]Similarly, to the extent the plaintiff alleges a claim of bailment sounding in tort, his sole remedy against the Commonwealth is under the Act.

[8]Unlike, for example, a defense of improper presentment under G. L. c. 258, § 4. See *Vasys* v. *Metropolitan Dist. Commn.*, 387 Mass. 51, 55 (1982).