# United States Court of Appeals
## For the First Circuit

Nos. 04-1891; 04-1899

ERIC R. CRETE,

Plaintiff, Appellee/Cross-Appellant,

v.

City of Lowell,
Defendant, Appellant,

EDWARD DAVIS III, in his personal capacity and as
Superintendent of the Lowell, Massachusetts Police
Department; BRIAN J. MARTIN, in his official
and personal capacities,
Defendants, Cross-Appellees,

STEPHEN CIAVOLA, in his official and personal capacities;
TERRANCE KANE, in his personal capacity; RICHARD JOHNSON,
Defendants.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before
Torruella, Lynch, and Lipez,
Circuit Judges.

Daniel S. Sharp for Crete.
Christine P. O'Connor, City Solicitor, with whom Maria Sheehy,
Assistant City Solicitor, was on brief, for City of Lowell.

August 11, 2005

**LYNCH**, **Circuit Judge**. Two issues are presented by this case, raising claims of negligent hiring by a city. The first is whether the district court was correct in entering summary judgment against plaintiff Eric Crete's federal civil rights claim, under 42 U.S.C. § 1983, that the City of Lowell was deliberately indifferent to Crete's rights when it hired Officer Steve Ciavola in the fall of 1995. Crete says Ciavola used excessive force when he arrested Crete in March of 1999.

The second question, under Massachusetts law, is whether the City's hiring of Ciavola is within the discretionary function exception to the Massachusetts Tort Claims Act, Mass. Gen. Laws ch. 258, § 10(b) (MTCA). Put differently, does the MTCA permit a negligent hiring claim against a city which hires a police officer under the Massachusetts Civil Service System?

We review both issues de novo. The district court was correct to dismiss the section 1983 claim but erred in not dismissing the MTCA claim. We vacate the MTCA verdict and direct entry of judgment for the City.

## I.

We recite the facts in the plaintiff's favor as the summary judgment rule requires. Young v. City of Providence, 404 F.3d 4, 15 (1st Cir. 2005).

Steve Ciavola was hired as a police officer with the City in the fall of 1995. In March 1999, Ciavola arrested Crete and

during the course of the arrest Ciavola "threw [Crete] down onto the pavement" and "pushed [his] head onto the sidewalk three or more times." Crete alleged that he never "threatened or physically resisted" Ciavola in any way, so as to justify Ciavola's response.

Crete filed suit in federal court claiming violations of the federal constitution and Massachusetts law. As to Ciavola he alleged excessive force, malicious prosecution, assault and battery, and intentional infliction of emotional distress.[1] As to the City, he alleged two different theories of liability attacking the City's decision to hire Ciavola: (1) liability under 42 U.S.C. § 1983 for failing to adequately screen Ciavola during hiring and (2) liability under the MTCA for negligently hiring Ciavola.

The negligent hiring claim was based on the allegation that the City knew or reasonably should have known that Ciavola had a criminal history, including one conviction for assault and battery, and that the City failed to exercise reasonable care when it hired Ciavola as a police officer. As a result of the negligent hiring, Crete alleged that he suffered injuries at the hands of Ciavola and incurred expenses due to those injuries.

The City filed for summary judgment on both counts. On August 30, 2002, the district court granted the City and other

---

[1]Ciavola filed for bankruptcy and the claims against him were stayed. The excessive use of force by Ciavola was part of the claim against the City for negligent hiring, and this evidence was heard by the jury. The plaintiff voluntarily dismissed the claims against Ciavola after this trial.

defendants summary judgment as to the section 1983 claim[2] and denied summary judgment as to the negligent hiring claim. The MTCA negligent hiring claim proceeded to trial;[3] the jury found the City liable and awarded damages of $143,000. This amount was subsequently reduced to $100,000 pursuant to Mass. Gen. Laws ch. 258, § 2.

We describe the undisputed record as to the hiring of Ciavola in the fall of 1995, noting there is no claim that his hiring violated any statute or regulation or did not comply with the City's hiring process in place at that time.

In Massachusetts, hiring of police officers is governed by state civil service laws and regulations. The civil service laws grant and restrict certain types of hiring authority and also set up procedural restrictions. As to substantive restrictions, the statute forbids the hiring of an individual who has been convicted of a crime within one year of the date of hiring. See Mass. Gen. Laws ch. 31, § 50. Nonetheless, the statute grants an

---

[2]City Manager Brian Martin and Superintendent Edward Davis were defendants in the section 1983 claim and are listed as parties on appeal. Both declined to file a brief. Crete offers no legal or factual argument on appeal which distinguishes the claim against the City from the claim against the individuals. Any separate arguments as to Martin or Davis are therefore waived. We affirm the grant of summary judgment as to them as well.

[3]The City also alleges that the district court erred in the admission of certain evidence introduced by Crete during trial. Because we hold that hiring was a discretionary function and therefore, the claim should never have gone to trial, we do not address these claims of error.

exemption from that restriction. If an applicant has been convicted of any offense for which the "sole punishment imposed was (a) a fine of not more than one hundred dollars, (b) a sentence of imprisonment in a jail or house of correction for less than six months, with or without such a fine, or (c) a sentence to any other penal institution under which the actual time served was less than six months, with or without such fine," then the statute expressly gives the hiring authority "discretion" to hire that applicant. Id. Outside of this one-year period, this substantive restriction on the City's exercise of discretion does not apply.[4] Sergeant Fleming, the director of recruitment and hiring for the City in the fall of 1995, testified that if the background check reveals something about the candidate's past which is not immediately disqualifying (either because the conviction fell outside of the one-year period or because it fell within the exception to the substantive restriction of Mass. Gen. Laws ch. 31, § 50), but is of concern, the appointing authority is allowed to look into the incident further.

There is no dispute that the City ran the required Massachusetts Criminal Offender Record Information (CORI) and the National Criminal Information System (NCIS) inquiries on Ciavola.

---

[4]Mass. Gen. Laws ch. 41, § 96A prohibits any person "who has been convicted of any felony" from being appointed as a police officer "of a city, town or district." This statute was not implicated in the hiring of Ciavola because Ciavola's conviction was a misdemeanor.

Ciavola's CORI report revealed two citizen criminal complaints filed against him for assault and battery, arising out of the same incident. In August 1994, one complaint resulted in a misdemeanor assault and battery conviction and a sentence of one year of probation. His probation was terminated four months later in December 1994. The other complaint was dismissed. Thus under the civil service rules, the City was not precluded from hiring Ciavola.[5] Indeed, as explained later, once the Massachusetts Human Resources Division (HRD)[6] has certified a candidate on a ranked list, the city will, absent special considerations, ordinarily hire a candidate in rank order from the list.

The hiring process in place during the fall of 1995, the time of Ciavola's hiring, required the appointing authority of the municipality to request a certified list of eligible police officer candidates from the HRD. Mass. Gen. Laws ch. 31, § 6. City Manager Martin, the appointing authority for the City, considered the budget and determined that the City could hire two new police officers and the appropriate request to HRD was made. Upon receipt

_____

[5]The City and Crete both treat December 14, the termination date of probation, as the date of conviction. We accept this date as agreed by the parties and do not delve into the state law question of whether the date of conviction was in August 1994, outside the one year disqualification period. The difference in dates as to date of conviction makes no difference to the outcome of this case, as the City also had discretion in hiring if the August date is used.

[6]The HRD is a Massachusetts agency responsible for hiring civil service employees.

of such request, the HRD "certif[ied] from the eligible list sufficient names of persons for consideration of their qualifications for appointment by the appointing authority." Id.[7]

In accordance with Mass. Gen. Laws ch. 31, § 25, the City notified the individuals on the HRD list and asked them to pick up an application if they wanted to be considered for the available positions. Ciavola filled out an application. Once the department received the applications, a criminal history check was performed on each applicant. If the applicant was not ineligible under Mass. Gen. Laws 31, § 50 due to disqualifying entries in the report, then a background check was performed.

Michael Farnum, a court prosecutor in Lowell district court who was trained in conducting background checks, conducted Ciavola's background check. Farnum checked Ciavola's past employment and spoke with his references, all of whom were favorable.

Each candidate interviewed for the position. During Ciavola's interview, Officer Fleming made further inquiries into the events surrounding the conviction. Ciavola indicated that he pled guilty because he had no money and he could not afford a lawyer. Fleming followed up the interview with a call to Chief Probation Officer Gary McGee who stated that Ciavola was "level

_____

[7]HRD ranks the candidates on list based on the score obtained on the civil service exam and a variety of other considerations such as geographical location and veteran status. See Mass. Gen. Laws ch. 31, § 26.

headed and would make an excellent police officer." Fleming noted that "McGee said he normally does not give job references but felt compelled in this situation in order that Ciavola get a fair deal."

Upon conclusion of the entire process, Fleming compiled all the information and made hiring recommendations to Superintendent Davis. Davis accepted the recommendation of Ciavola, and Ciavola was given a provisional offer of employment.[8]

Although the "ultimate selection [for appointment or promotion of civil service officers] is left to the discretion of the appointing authority," Burns v. Sullivan, 473 F. Supp. 626, 631 (D. Mass. 1979), offers must be handed out in accordance with an individual's ranking on the list received from HRD unless the City has good reason to offer the appointment to a lower ranking individual. Mass. Gen. Laws ch. 31, § 27. If the City wants to do so, it must "bypass" or "remove" the higher ranking individual. If a candidate is "bypassed," he or she stays on the list, but is not hired for that position because the City has a good and credible reason not to hire the individual at that time. To be "removed" means that the City elects to take the candidate off the list because the City has no intention of ever hiring that person. To

_____

[8]Fleming testified that a provisional offer means that the City is prepared to hire the candidate if his or her mental and physical health are in order. Each provisional hire must pass a medical, psychological and fitness exam. If the individual does not pass one of these tests, the City cannot hire that individual; if the individual passes the tests, the department generally must hire him or her.

bypass or remove, the City must file a list of stated and legitimate reasons with the administrator of the HRD. See id. The administrator has a limited power to accept or reject the reasons given by the City for the bypass. See MacHenry v. Civil Serv. Comm'n, 666 N.E.2d 1029 (Mass. App. Ct. 1996). Although the civil service laws cabin the discretion of the City as to which factors can be considered,[9] the City can "remove" an individual on the list if it concludes the appointment of that person "would be detrimental to the public interest." Massachusetts Human Resources

---

[9]The Civil Service laws are in place in an effort to guard against political considerations, favoritism, and bias in governmental employment decisions. See Murray v. Justices of Second Dist. Ct. of E. Middlesex, 451 N.E.2d 408 (Mass. 1983). Basic merit principles should guide all decisions in the civil service system, including:

(a) recruiting, selecting and advancing of employees on the basis of their relative ability, knowledge and skills including open consideration of qualified applicants for initial appointment; (b) providing of equitable and adequate compensation for all employees; (c) providing of training and development for employees, as needed, to assure the advancement and high quality performance of such employees; (d) retaining of employees on the basis of adequacy of their performance, correcting inadequate performance, and separating employees whose inadequate performance cannot be corrected; (e) assuring fair treatment of all applicants and employees in all aspects of personnel administration without regard to political affiliation, race, color, age, national origin, sex, marital status, handicap, or religion and with proper regard for privacy, basic rights outlined in this chapter and constitutional rights as citizens, and; (f) assuring that all employees are protected against coercion for political purposes, and are protected from arbitrary and capricious actions.

Mass. Gen. Laws ch. 31, § 1.

Division, Personnel Administration Rules, PAR.09.  One such consideration may be past criminal history.  A candidate has the right to appeal the HRD's approval of a City's bypass or removal decision to the Civil Service Commission (CSC).  See Mass. Gen. Laws ch. 31, § 2(b).

During this hiring cycle, Ciavola was fourth on the list of candidates who made themselves eligible for the position of police officer with the City.  The first candidate was bypassed because of a "very serious record revolving around domestic violence issues."  The second candidate was bypassed because he "had been charged with a felony assault and battery with a dangerous weapon, a shod foot."  The next candidate and Ciavola were both given provisional offers.[10]  Ciavola passed all of the required tests and was selected for appointment on November 2, 1995.

**II.**

Negligent Hiring under the MTCA

The "negligent hiring" claim is based on the City's decision not to bypass Ciavola.  The essence of plaintiff's negligent hiring claim is that the City should have bypassed Ciavola in light of his prior criminal conviction.  Unless it went through the bypass procedure, the City was required to hire him.

---

[10]The third candidate on the list failed the physical fitness test and therefore could not be hired.

-10-

Thus at least two types of specific discretion are involved. The first is the discretion given the City to hire Ciavola despite the conviction. Second, if the City did not want to hire Ciavola, it had discretion whether to use the bypass or the removal procedure.

The Massachusetts Supreme Judicial Court (SJC) has never directly addressed the issue of whether claims of negligent hiring of police officers (or other municipal employees), hired pursuant to the civil service laws, are within the discretionary function exception to the MTCA. Nonetheless, the SJC has a fairly well established structure for analysis of such questions and the outcome in this case is clear.[11] Indeed, to hold that there was a viable MTCA claim here would be in conflict with Massachusetts law which protects municipalities from liability in certain situations.

The MTCA is a legislative waiver of the state's sovereign immunity and provides for tort liability against the municipality for the negligence or wrongful conduct of its employees:

> Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment in the same manner and to the same extent as a private individual under like circumstances.

Mass. Gen. Laws ch. 258, § 2.

---

[11]As a federal court sitting in diversity, we apply state law as we understand it. See Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391, 402 (1st Cir. 2005). No request to certify this question to the Massachusetts SJC was made at any time by any party.

But that liability is subject to exceptions, most notably the discretionary function exception:

> The provisions of [liability], shall not apply to: -- . . .
>
> (b) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused; . . . .

Mass. Gen. Laws ch. 258, § 10(b). That exception abrogated and narrowed the exception to immunity which existed at common law.

The model used by the Massachusetts legislature in enacting the MTCA was the Federal Tort Claims Act (FTCA). The SJC has identified a two step analysis for application of the discretionary function exception: (1) whether the governmental actor had any discretion at all as to what course of conduct to follow, and, if so, (2) whether the discretion that the actor had is that kind of discretion for which § 10(b) provides immunity from liability. Greenwood v. Town of Easton, 828 N.E.2d 945, 948 (Mass. 2005); Harry Stoller & Co. v. City of Lowell, 587 N.E.2d 780, 782-83 (Mass. 1992) (citing Berkovitz v. United States, 486 U.S. 531, 536 (1988)). The first step is satisfied here. The City had "discretion" to hire an individual who had a conviction within one year of hiring when the punishment involved less than six months of confinement, as in the case of Ciavola. Mass. Gen. Laws ch. 31, § 50. There is no regulation or policy that mandates a

-12-

particular outcome; instead, the City made a choice not to bypass Ciavola for a different candidate with a different background.

The parties have framed the case around the second step. The district court held, on summary judgment, that the only relevant inquiry on the second step is whether the discretion is "an integral part of government policy making or planning." The district court found it self-evident that the answer to that is no.[12] That was error. The City renewed the issue by filing a Motion for Judgment as a Matter of Law at the end of trial on the negligent hiring claim, and the district court denied the motion without opinion.

The tests used by the SJC consider a number of factors, not just the "integral part" factor used by the district court. See, e.g., Greenwood, 828 N.E.2d at 949-50. The SJC has stated that the key to determining whether the second step is satisfied, and thus immunity is provided, is whether the discretionary action at issue involves policy making or planning. See Stoller, 587 N.E.2d at 783. "Where there is room for policy judgment and decision, there is discretion." Barnett v. City of Lynn, 745 N.E.2d 344, 346 (Mass. 2001) (quoting Patrazza v. Commonwealth, 497 N.E.2d 271 (Mass. 1986)). Even decisions made at the operational

---

[12]In holding so, it relied on a pre-MTCA case, Whitney v. City of Worcester, 366 N.E.2d 1210, 1216 (Mass. 1977). Although Whitney is a useful guide in determining the scope of the discretionary function exception, see Stoller, 587 N.E.2d at 783, it does not purport to construe the MTCA.

level or made based on an individual, case-by-case analysis, can involve conduct immunized by the MTCA, as long as the conduct involves considerations of public policy. See Stoller, 587 N.E.2d at 784 (citing United States v. Gaubert, 499 U.S. 315, 325-26 (1991)); Pina v. Commonwealth, 510 N.E.2d 253, 257 (Mass. 1987) (citing Bartel v. Fed. Aviation Admin., 617 F. Supp. 190, 196 n.29 (D.D.C. 1985)).

The SJC also relies on at least two additional considerations to determine whether immunity should exist due to the exercise of discretion: (1) whether the imposition of liability might jeopardize the quality of the governmental process or (2) whether judicial scrutiny of the decision would usurp the power and responsibility of either the legislative or executive branch of government. See Pina, 510 N.E.2d at 256-57 (citing United States v. Varig Airlines, 467 U.S. 797, 814 (1984) and Whitney, 366 N.E.2d at 1216)); see also Sena v. Commonwealth, 629 N.E.2d 986, 991 (Mass. 1994).

The SJC, in interpreting the FTCA, explicitly adopted the position that "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Poly v. Moylan, 667 N.E.2d 250, 255 (Mass. 1996) (quoting Gaubert, 499 U.S. at 324). The SJC noted that the

-14-

discretionary function exception to the MTCA was guided by the same exception in the FTCA and determined that the MTCA analysis was relevant in answering the FTCA question presented.  Id. at 254 n.5.

We believe that the SJC, if faced with a similar set of facts such as the ones before us, would extend the rationale of Gaubert to the MTCA and would find that the discretion exercised by the City in hiring Ciavola -- discretion granted to it by the Massachusetts legislature -- was grounded in policy and was therefore immune from tort liability.  We think this especially true in the civil service context, as this area of law is heavily regulated by the legislature and personnel decisions which are in compliance with the laws and regulations are reviewed deferentially, as explained below.

But there is an even narrower analysis which itself requires reversal.  The very basis for the negligent hiring claim is that the City chose not to bypass Ciavola despite his criminal record.  We agree with the City that under Massachusetts law as construed by the SJC, the discretion exercised in the City's decision not to bypass Ciavola in the civil service hiring process was that kind of discretion for which Mass. Gen. Laws ch. 31, § 10b provides immunity from liability.

The hiring, promotion, and firing of civil service employees is heavily regulated by statute and by regulation, but in several instances, the legislature has given the appointing

-15-

authority discretion in making certain employment decisions. For example, the civil service laws allow the City to bypass or remove a candidate in favor of a lower ranked candidate as long as they file a list of legitimate reasons for this bypass with the administrator of the HRD. This grant of discretion includes the discretion not to attempt to bypass. See Mass. Gen. Laws ch. 31, § 27. The state legislature has also expressly given the City discretion as to whether to bypass or hire a candidate with a criminal conviction within one year of hiring; this discretion presupposes the discretion to hire this person if the conviction falls outside of the one year period. See Mass. Gen. Laws ch. 31, § 50. In addition, the HRD Personnel Administration Rules allow for the appointing authority to remove candidates from consideration if it would be "detrimental to the public interest" to hire them. See Massachusetts Human Resources Division, Personnel Administration Rules, PAR.09. These decisions involve a variety of considerations, both merit and policy based. See City of Cambridge v. Civil Serv. Comm'n, 682 N.E.2d 923, 926 (Mass. App. Ct. 1997); Burns, 473 F. Supp. at 629 ("When the legislature enacted [§ 27], it recognized that some degree of discretion was necessary to insure that the most suitable applicant would fill the vacancy."); cf. Comm'r of Metro. Dist. Comm'n v. Dir. of Civil Serv., 203 N.E.2d 95, 101 (Mass. 1964) (Under the civil service statute which gives preferences to disabled veterans, the

"appointing authority has the power and duty to protect the public interest in having only public officers and employees of good character and integrity.").

When a civil service employee or applicant seeks to challenge one of these discretionary decisions, the civil service laws set up the scheme through which this challenge must be made. See Mass. Gen. Laws ch. 31, § 2(b).[13] In these instances, the legislature determined that a degree of deference is appropriate to individuals making hiring decisions and has fashioned a statutory scheme for dealing with these types of claims. The appointing authority's decision -- as accepted by the administrator, Mass. Gen. Laws ch. 31, § 27 -- is reviewed by the CSC, id. § 2, and the CSC's decision is reviewed in the state courts. Each reviewer must give the appropriate level of deference to the entity it is reviewing: the CSC must uphold the appointing authority's reasons if the appointing authority meets its burden of proving that there was a reasonable justification for the action taken, see City of Cambridge, 682 N.E.2d at 925, and the state courts must uphold the determination of the CSC if it applied the proper standard of

---

[13]Similarly, employees with claims of employment discrimination must follow the exclusive procedures for filing claims against their employers. See Green v. Wyman-Gordon Co., 664 N.E.2d 808, 811-12 (Mass. 1996). These statutory provisions encompass not only specific claims under the statute, but also other state common law and statutory causes of action that in reality deal with the same subject matter. Id. at 813.

review and its conclusion was supported by substantial evidence. Id.

Although the civil service laws do not set out a scheme for challenges by third parties who claim to be harmed by such hiring decisions, the principle is the same: the legislature, through heavy regulation of the civil service system, intended to insulate these discretionary hiring decisions when they are exercised in accordance with the civil service laws and regulations. To ensure the discretionary decisions of governmental entities would be insulated from liability, the legislature specifically included an exception to MTCA liability for discretionary functions. See Pina, 510 N.E.2d at 258. The legislature's "wish to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through medium of an action in tort" is an underlying justification for the discretionary function exemption to the MTCA. Id. (quoting Varig Airlines, 467 U.S. at 814) (quotation marks omitted)). We have found no case from the SJC opening up a discretionary decision to MTCA liability where the legislature has explicitly granted discretion to a governmental agency and directed the agency to consider merit and policy concerns in the exercise of that discretion.

The civil service laws gave the City two opportunities to exercise its discretion with regards to Ciavola. In accordance

-18-

with Mass. Gen. Laws ch. 31, § 50, the City exercised its discretion and elected to hire Ciavola, despite his criminal conviction for assault and battery. The City also determined that based on his strong credentials and other indications that he would make an "excellent officer," there was no reason to bypass him under Mass. Gen. Laws ch. 31, § 27. After exercising this discretion, the City then offered the appointment to Ciavola as he was the next highest ranked individual on the list. The hiring process here complied with the civil service laws and regulations.

There is no indication that the legislature, in granting such discretion, intended to permit third party law suits over whether the City properly handled that discretion not to bypass. Where the appointing authority has shown to the CSC that it had a reasonable justification for its bypass decision, that is not subject to second guessing even by the CSC. See City of Cambridge, 682 N.E.2d at 926 ("It is not within the authority of the [CSC] to substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority."); Town of Burlington v. McCarthy, 805 N.E.2d 88, 89 (Mass. App. Ct. 2004) ("It is not for the commission to assume the role of super-appointing agency, and to revise those employment determinations with which the commission may disagree."). The legislature surely did not intend for those decisions to be subject to attack in third party tort suits. Allowing such suits would allow tort actions to

-19-

"be used as a monkey wrench in the machinery of government decision making." Pina, 510 N.E.2d at 257 (quoting Cady v. Plymouth-Carver Reg'l Sch. Dist., 457 N.E.2d 294, 297 (Mass. App. Ct. 1983)).

This conclusion is further supported by the additional factors, noted above, which are relied on by the SJC to determine whether discretionary decisions are immune from liability. See Sena, 629 N.E.2d at 991. Imposition of tort liability in a hiring that is otherwise legal and comports with the civil service laws could jeopardize the quality and efficiency of the governmental process by causing more restrictive hiring practices, perhaps taking away the City's ability to consider any candidates with a minor criminal history, even though the current law recognizes that the City is in the best position to determine whether this individual should be hired. Finally, continuing judicial scrutiny over hiring practices such as the City's would impinge on the long-standing domain of the executive branch, namely the provision of public safety. See id.

SJC precedent finding other types of local decisions to be within the discretionary function exception also supports this outcome. See, e.g., Barnett, 745 N.E.2d at 346 (determining that the city has discretion in deciding how best to expend its limited resources in order to provide safe and secure conditions and insulating from liability the City's decision not to put up guard-railing); Sena, 629 N.E.2d at 990-91 (finding that an officer's

-20-

decisions as to "whether, when, how, and whom to investigate, and whether and when to seek warrants for arrest" fall within the discretionary function exception as they are "based on considerations of, and necessarily affect, public policy"); Pina, 510 N.E.2d at 257-258 (holding that the decision to deny disability benefits to a particular individual was insulated from liability under the discretionary function exception); Patrazza, 497 N.E.2d at 274 (holding that when a decision "was committed to the responsibility of the department, whose job was to weigh the costs and benefits of various approaches," the decision to use unburied guardrail ends on unlimited access highways was protected by discretionary function).

Our conclusion is only buttressed by the fact that the MTCA is modeled on the FTCA and construction of the MTCA is meant to parallel construction of the FTCA. See Pina, 510 N.E.2d at 257. This is an important point. The text of the two provisions, federal and state, are virtually identical.[14] The SJC has consistently provided parallel construction of the MTCA with the FTCA, and it has relied on the United States Supreme Court's construction of similar provisions of the FTCA. See Pina, 510 N.E.2d at 257 (The SJC has "look[ed] for assistance from the

---

[14]The discretionary function exemption under the FTCA bars claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).

Federal courts' treatment of cognate provisions of the [FTCA].") This is particularly true in the SJC's construction of the MTCA's discretionary function exception. Sena, 629 N.E.2d at 989-90 ("In particular, Federal case law concerning the Federal Act's discretionary functions exception has been a source of general guidance in our examination of [the MTCA discretionary function exemption.]").

Further, federal law is informative on the issue of whether hiring decisions may involve government policy making or planning. This is important because uniformly the federal circuit courts under the FTCA have found that employer decisions such as hiring, discipline, and termination of employees are within the discretionary function exception. See, e.g., Vickers v. United States, 228 F.3d 944, 950-51 (9th Cir. 2000); Burkhart v. Washington Metro. Area Transit Auth., 112 F.3d 1207, 1217 (D.C. Cir. 1997); Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995); Richman v. Straley, 48 F.3d 1139, 1146-47 (10th Cir. 1995); Radford v. United States, 264 F.2d 709, 710-11 (5th Cir. 1959).

Beyond the conclusion in those federal cases, the reasoning is apt. The federal courts have considered that to determine whether a decision comes within the protection of the discretionary function exception, "[t]he focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the

-22-

actions taken and on whether they are susceptible to policy analysis." Gaubert, 499 U.S. at 325. The federal courts have determined that hiring decisions are susceptible to and involve policy analysis.[15] An entity must weigh budgetary constraints, public perception, and economic conditions in determining the number of hires as well as who to hire. In addition, the choice between several potential employees "involves the weighing of individual backgrounds, office diversity, experience and employer intuition." Tonelli, 60 F.3d at 496. These types of decisions are "multi-factored" and require "the balancing of competing objectives"; they are of the "nature and quality that Congress intended to shield from tort liability." Id.; see Burkhart, 112 F.3d at 1217.

We have no basis to think that the SJC, in a radical departure from its precedents, would ignore this body of federal law. In prior decisions, the SJC has not done so; to the contrary, it has adopted the federal law standards and reasoning, which lead to the unanimous views of the federal courts of appeals, to construe the same provision in the MTCA. See Sena, 629 N.E.2d at 990-91 (relying in part on reasoning in federal case law to conclude that an officer's decision "regarding whether, when, how,

---

[15]The federal law approach, we note, addresses the more general question of whether negligent hiring claims are cognizable and concludes they are not. See, e.g., Tonelli, 60 F.3d at 496. This case presents a narrower question the outcome of which the broader principle reinforces.

-23-

and whom to investigate or to prosecute" was within the discretionary function exception). Indeed the SJC has explicitly adopted the reasoning in Gaubert that discretionary decisions based on public policy, even those decisions made at an operational level, are protected under the MTCA. See Stoller, 587 N.E.2d at 783-84.

The outcome suggested by Crete would also be a radical departure from the law of other states: most states also consider claims of negligent hiring to be barred by the discretionary function exception. See, e.g., Storm v. Town of Ponce Inlet, 866 So.2d 713, 719 (Fla. Dist. Ct. App. 2004); Harper v. City of East Point, 515 S.E.2d 623, 626-27 (Ga. Ct. App. 1999); Adams v. City of Tenakee Springs, 963 P.2d 1047, 1051 (Alaska 1998); Johnson v. Mers, 664 N.E.2d 668, 674-75 (Ill. App. Ct. 1996); Peterson v. San Francisco Comm. Coll. Dist., 685 P.2d 1193, 1202 (Cal. 1984). The parties point to only one state which has reached a contrary conclusion. See Doe v. Cedar Rapids Comm. Sch. Dist., 652 N.W.2d 439, 447 (Iowa 2002).

B. Entry of Summary Judgment in the Section 1983 Claim:

Relying on County Commissioners of Bryan County v. Brown, 520 U.S. 397 (1997), the district court granted summary judgment for the City. Given the assurances that despite his assault and battery conviction, Ciavola would "make an excellent police officer," the district court found "it cannot be said that it was

-24-

'plainly obvious' based on Ciavola's record that hiring him would result in the violation of a third party's rights." We look to the summary judgment record and review the district court's decision de novo.

In Young v. Providence, 404 F.3d 4 (1st Cir. 2005), this court addressed the standard for assessing liability against a municipality under 42 U.S.C. § 1983 based on a City's hiring of a public employee.[16] We stated that the plaintiff bears the burden of showing that a constitutional violation caused the plaintiff's harm and that the City is responsible for that violation. See id. at 25-26. In this case, the first element is satisfied: the City does not dispute that Ciavola used excessive force when he arrested Crete.

To satisfy the second element -- that the City is responsible for that violation -- the plaintiff must show that the action at issue constitutes a policy or custom attributable to the City. Id. at 26. This policy or custom must have caused the depravation of the plaintiff's constitutional rights and the municipality must have the requisite level of culpability: deliberate indifference to the particular constitutional right of

_____

[16]In Young we did not need to reach the question of whether a single hiring decision due to inadequate screening can ever lead to liability against the City under section 1983. See Young, 404 F.3d at 31. Similarly, in this case, it is unnecessary for us to reach the issue of whether a single hiring decision can make the City susceptible to section 1983 liability.

the plaintiff.  Id.  To succeed under this "exceptionally stringent" standard, Crete must show that Ciavola's use of excessive force against him was a "plainly obvious consequence" of hiring Ciavola, given the department's knowledge of Ciavola's background.[17]  Id. at 30 (citing Brown, 520 U.S. at 412-13).

In this case, the City's hiring decision was itself legal, and the City did not authorize Ciavola to use excessive force.  The process used to investigate the background of Ciavola was reasonable:  it revealed the past conduct which Crete asserts links the hiring of Ciavola with his use of excessive force.  The department made its hiring decision with knowledge of Ciavola's background and assurances from Ciavola's probation officer that Ciavola would "make an excellent police officer" despite his assault and battery conviction.  But "[e]ven when an applicant's background contains complaints of physical violence, including acts of aggression and assault, this may still be insufficient to make a City liable for inadequate screening of an officer who then uses excessive force."  Id. at 30-31.  And such is the case here:  Crete simply cannot meet his heavy burden.  There was insufficient evidence on which a jury could base a finding that a "plainly obvious consequence" of the City's decision to hire Ciavola was the

_____

[17] Crete attempts to paint this case as one involving a complete failure to screen because the City Manager never inspected the background materials of any police officer candidate, including Ciavola.  Crete's argument is frivolous, as our earlier recitation of the facts shows.

-26-

violation of Crete's constitutional rights.  See id. at 31; Brown, 520 U.S. at 415.  Summary judgment was proper.

### III.

Accordingly, we **affirm** the grant of summary judgment as to the section 1983 claim, **vacate** the judgment against the City on the negligent hiring claim and **remand** to the district court to enter judgment for the City.  Costs are awarded to the City.