TOWN OF BURLINGTON & another[1] *vs.* JAMES MCCARTHY. No. 02-P-1356. March 24, 2004. *School and School Committee,* Custodian, Appointment of personnel. *Civil Service,* Decision of Civil Service Commission. *Administrative Law,* Agency's authority. *Criminal Offender Record Information.*

In this case, the Civil Service Commission (commission) failed to comply with the holding in *Cambridge* v. *Civil Service Commn.*, 43 Mass. App. Ct. 300, 304-305 (1997). The *Cambridge* case is clear in its directive. Where an appeal from an action by the appointing authority is brought before it, the commission does not have the authority "to substitute its judgment about a valid exercise of discretion based on merit or policy considerations by an appointing authority. . . . In the task of selecting public employees of skill and integrity, appointing authorities are invested with broad discretion." *Ibid.*

Accordingly, we affirm the judgment of the Superior Court, which, pursuant

[1] Burlington School Committee.

to G. L. c. 31, § 44, vacated the commission's decision to set aside a determination made by the town of Burlington and its school committee (hereinafter collectively Burlington) to bypass James McCarthy for the permanent civil service position of building custodian. We emphasize again, as in *Cambridge*, that in reviewing employment actions of appointing authorities, the role and jurisdiction of the commission is to determine whether the appointing authority has sustained its burden of proving that there was reasonable justification for the employment action. It is not for the commission to assume the role of super-appointing agency, and to revise those employment determinations with which the commission may disagree.

The commission set aside the decision to bypass McCarthy for permanent civil appointment because, in its view, Burlington had improperly considered Criminal Offender Record Information (CORI) materials concerning McCarthy's prior criminal history, which included eight criminal offenses.[2,3] The commission ordered that McCarthy's name be placed at the top of the next certification list for an original appointment to the position of building custodian in the Burlington schools.

Not only was the commission's decision to substitute its judgment on the bypass in excess of its statutory authority, the commission's ruling that Burlington could not properly consider CORI information was also an error of law. General Laws c. 71, § 38R,[4] explicitly authorizes school systems to use CORI information for hiring purposes. Given the obvious importance of

---

[2] The offenses included three convictions for operating a vehicle under the influence of alcohol, operating a vehicle to endanger the lives and safety of others, operating a vehicle with a revoked registration, two convictions for attaching a wrong license plate to his motor vehicle, shoplifting, and a compulsory insurance violation. The list reflects a habitual and sustained disrespect for the law. Moreover, we note that several of the offenses, which occurred in the early 1990's (specifically the conviction for operating a vehicle after a license revocation in 1993, and the *third* conviction for driving under the influence), are offenses assuredly of concern in connection with vehicular safety near schools.

[3] Burlington also listed McCarthy's attendance record as an additional reason for the bypass. However, it is clear that McCarthy's criminal history was the predominant concern and motivating force behind Burlington's decision.

[4] General Laws c. 71, § 38R, provides in pertinent part as follows:

"The school committee . . . of any city, town or regional school district and the principal, by whatever title the position be known, of a public school of any city, town or regional school district shall have access to criminal offender record information of any applicant for any position in the school department . . . ."

The history of § 38R reflects a legislative intent to empower appointing authorities, if involved in hiring decisions, to consider criminal offender record information for the purpose of protecting students. We note that in § 95 of the Education Reform Act of 1993, this legislative empowerment was more circumscribed, authorizing school superintendents to obtain CORI information only for those prospective employees who would have "frequent contact with students." St. 1993, c. 71, § 95. However, in 1996, the Legislature broadened access to CORI information in connection with hiring determinations for school positions with the enactment of G. L. c. 71, § 38R, quoted above. Further, and consistent with continuing legislative concern for student safety, in 2002, the Legislature again broadened access to CORI records by amending § 38R to

ensuring the safety of students in schools, and consistent with a policy Burlington had adopted and uniformly applied in cases involving adult CORI information in the context of hiring, Burlington demonstrated a reasonable justification for its decision not to offer McCarthy a permanent appointment.[5]

*Judgment affirmed.*

*Darren R. Klein* for the plaintiffs.
*Frank J. McGee* for the defendant.

---

require school systems to run CORI checks on "any current or prospective employee or volunteer of the school department, who may have direct and unmonitored contact with children, including any individual who regularly provides school related transportation to children," at least once every three years. G. L. c. 71, § 38R, as amended by St. 2002, c. 385, § 2 (effective February 25, 2003).

[5]McCarthy began work as a substitute custodian in the Burlington school system in 1993 and became employed as a full-time provisional custodian in August of 1996. General Laws c. 71, § 38R, which was enacted in 1996, was thus not in effect at the time McCarthy was hired to work as a custodian on a provisional basis.

