*500 OPINION OF THE COURT
Leon Ruchelsman, J.
The defendants have moved seeking to prevent the plaintiff from introducing evidence of the postaccident conduct of Henry Lewis. The plaintiff opposes the motion arguing such introduction is proper as admissions by conduct and as evidence of fabrications. Papers were submitted by the parties and arguments held. After reviewing all the arguments this court now makes the following determination.
On December 19, 2008 the plaintiff Shirley Miller was hit by a truck driven by defendant Henry Lewis at the intersection of Ninth Avenue and West 48th Street in New York County. Henry Lewis did not stop and exit the truck immediately following the accident. Rather, he drove some distance down the block, stopped there and proceeded to place numerous calls from his cell phone to various individuals working for his employer Duane Reade. He never called 911 and did not assist the plaintiff in any way. The defendants seek to preclude any mention of Lewis’ postaccident conduct since it is irrelevant, does not contain any evidence of negligence and will only serve to inflame the jury. The plaintiff counters such evidence should be admissible to demonstrate Lewis’ “consciousness of guilt” or as evidence of fabrication.
Conclusions of Law
While evidence demonstrating a consciousness of guilt may be introduced to support a conviction in a criminal case (see People v Yazum, 13 NY2d 302 [1963]), there is scant authority for such evidence in civil cases. Richardson (Jerome Prince, Richardson on Evidence § 4-611 [Farrell 11th ed 1995]) does note briefly that “[e]vidence of consciousness of guilt is admissible in a civil action and is accorded the same guarded probative value” (id. at 210). However, the cases cited there, Parrott v Pelusio (65 AD2d 914 [4th Dept 1978]) and Donohue v Losito (141 AD2d 691 [2d Dept 1988]), do not adequately explain the nature of such evidence, its probative value and prejudicial effect and the rationale permitting its admission. Indeed, the lack of any subsequent opinions drawing upon those cases, for the purposes sought here, attests to their limited precedential value.
Many other jurisdictions have considered the question whether evidence of postaccident conduct may be introduced to demonstrate what has been more aptly termed “consciousness of responsibility” (see Birch v Birch, 755 NW2d 144 [Iowa Ct *501 App 2008] [table; text at 2008 WL 2513799, 2008 Iowa App LEXIS 441 (2008)]) or “consciousness of liability” (see Rock v McHenry, 115 SW3d 419 [Mo Ct App, WD 2003]). In fact, almost 100 years ago it was already observed there was a conflict of opinion whether evidence of postaccident conduct could be admitted to demonstrate consciousness of liability. In the March 1918 edition of the Yale Law Journal the author discussed a Rhode Island case that permitted the introduction of evidence the defendant had transferred property to his wife following an accident involved with his jitney. The case itself had noted the conflict regarding this issue but the court held such evidence was admissible. The article entitled Evidence — Admissions— Transfer of Property as Admission of Liability (27 Yale LJ 712 [1918]) explained that
“there is a conflict of authority on the admissibility of such evidence. It is true that a transfer of property might be made without any consciousness of liability, as for example, simply to avoid the inconvenience of having the property tied up during a threatened suit. But on the other hand, the defendant has an opportunity to explain his conduct, and while the court should no doubt proceed with caution, and each case should be considered on its own facts, it would seem that in many cases such evidence might have sufficient probative value to justify its admission under proper instructions” (id. at 712).
The conflict has continued, although the majority of jurisdictions freely permit such evidence. Thus, for example in Birch decided five years ago, the court, citing earlier authority as well as current trends, stated that at least 12 states permit such evidence while only four exclude it. Of course, this court cannot decide the matter without thoroughly exploring the reasons for both admission and exclusion, policy considerations and other relevant factors. Moreover, the precise nature of the evidence of postaccident conduct is of no particular moment when deciding upon its admissibility other than to consider any prejudice that may result.
Thus, as already noted, evidence of flight, of transfers of property following an accident, of attempting to persuade others to “forget” damaging conduct (see Kendall v Hyannis Restorations Intl. Sales, Inc., 60 Mass App Ct 1122, 805 NE2d 91 [2004]) or of inconsistent or false statements (McNamara v Honeyman, 406 Mass 43, 546 NE2d 139 [1989]) can all be introduced as evidence supporting a consciousness of liability.
*502 Thus, the cases present, essentially, two grounds upon which such evidence would be admissible. The first, narrower ground is the “logical” connection between postaccident conduct and the accident itself where the conduct is contrary to law. Therefore, where leaving the scene of an accident is prohibited then such conduct of flight “permits an inference of consciousness of lack of care and of liability for the occurrence” (see State v Williams, 190 NJ 114, 127, 919 A2d 90, 97 [2007]). This rationale was echoed in Birch where the court held that the failure to remain at the scene, provide information and render assistance, all contrary to law, “was highly relevant to show a ‘consciousness of responsibility’ ” (2008 WL 2513799, *3, 2008 Iowa App LEXIS 441, *9).
Other courts offer a rationale far more broadly by simply noting that postaccident conduct such as leaving the scene, even if not illegal, “could properly be considered as some further proof’ of liability (Olofson v Kilgallon, 362 Mass 803, 806, 291 NE2d 600, 603 [1973]). Again, in Nolan v Borkowski (206 Conn 495, 538 A2d 1031 [1988]) the court stated that evidence of a transfer of property is admissible “to show a consciousness of liability and a purpose to evade satisfaction of it” (206 Conn at 505, 538 A2d at 1035).
The jurisdictions that prohibit such testimony generally hold that such evidence “bears no proximate relation to the cause of the collision” (see Schlosberg v Doup, 187 Ark 931, 934, 63 SW2d 337, 339 [1933]) and that “no question of negligence is involved in the failure” to stop and comply with any statute requiring such conduct (see Clark v Mask, 232 Miss 65, 70, 98 So 2d 467, 470 [1957]).
There can be little dispute that conduct following the accident indeed bears little if any “proximate relation” to the cause of the accident and the plaintiff is not arguing otherwise. Rather, the postaccident conduct evidence is being sought to argue that Lewis believed in some measure that he was “responsible for the mishap” (see Harrington v Sharff, 305 F2d 333, 338 [2d Cir 1962]). A categorical exclusion of such evidence as espoused by the minority position is too restrictive and prevents the jury from examining the defendant’s conduct with a more expansive lens. Equally untenable is another minority position equating postaccident conduct of, for example, leaving the scene without stopping, which is defined as “wilful and wanton,” as “some evidence of a wilful and wanton state of mind at the time the accident occurred” (see Peterson v Henning, 116 Ill App 3d 305, *503 308, 452 NE2d 135, 138 [4th Dist 1983]). A further minority position, not relevant in this case, permits postaccident conduct only where the plaintiff seeks exemplary or punitive damages (see Matbon, Inc. v Gries, 288 SW3d 471 [Tex Ct App 2009]).
Considering the balanced position adopted by the majority of jurisdictions that have considered the issue, the evidence sought to be admitted, namely that Lewis continued to drive further down the block, failed to call 911 and placed and received numerous phone calls to and from Duane Reade employees, is all admissible as evidence of Lewis’ consciousness of liability (see Johnson v Ingalls, 95 AD3d 1398 [3d Dept 2012]).
The defendants argue that such evidence is irrelevant, prejudicial and not even evidence of any improper behavior. It is true that Lewis’ “flight” was not definitive in the sense that he never presented himself. It is also true that Lewis, having presented himself, either with other Duane Reade employees or by himself shortly after the accident, would probably not have violated any statute prohibiting leaving the scene of an accident (see Vehicle and Traffic Law § 600; People v Hampton, 22 Misc 2d 432 [Westchester County Ct 1960] [holding that a 13-minute delay between the accident and reporting the accident was not a violation of the statute]). However, those factors argue in favor of permitting such evidence not against it since, as noted, the inferences are tempered. Moreover, the precise evidence of post-accident conduct permitted in this case is not so prejudicial as to render it wholly inadmissible.
Further, the court is not persuaded by some cases which seem to permit evidence of postaccident conduct only where the evidence is so compelling as to rule out any alternative explanation (see Rock v McHenry). That approach deprives the inferences mentioned and reaches the conclusion that should best be left to the trier of fact after both sides present their arguments and offers of proof. Indeed, the defendants, of course, are free to mitigate the impact of such evidence and have even argued as such in their motion papers and at oral argument. In any event, the motion seeking a categorical exclusion of such evidence is denied.
Concerning the plaintiffs argument the evidence is admissible as evidence of fabrication and alternatively should be admitted for that purpose, it is doubtful an additional rationale is even needed. However, a few comments concerning the scope of such questioning are now proper.
The plaintiff argues that Lewis, and Duane Reade employees as well, “fabricated his version of the happening of the accident” *504 (see plaintiffs mem in opposition at 11). However, there is no evidence to support that accusation. Lewis has consistently and continuously maintained that the wheel of his truck ran over the plaintiff. Whether or not that is disputed and whether or not Lewis’ own counsel will argue such has really no bearing upon the admissibility of Lewis’ postaccident conduct. While Lewis might have maintained a motive to fabricate as argued by plaintiff there is no evidence that Lewis engaged in such postaccident conduct to provide an “opportunity to fabricate a favorable version of the happening of the accident” (id.). Equally speculative is the plaintiffs assertion that other Duane Reade employees arrived at the scene to conspire with Lewis to present a comprehensive version of the accident that was not true. Likewise, the mere fact that Duane Reade personnel arrived at the scene even before the police, if true, does not further corroborate these speculative theories. Zealous employees or concerned supervisors that arrived quickly do not reasonably permit any inferences of fabrication or a conspiracy concerning the happening of the accident.
Therefore, the postaccident conduct of Lewis may be introduced into evidence as noted tending to establish consciousness of liability. Any further questioning concerning allegations of fabrication or conspiracy to fabricate is speculative and may not be explored at trial.